UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| WAYNE A. BRADSHAW,<br>*on his own behalf and on behalf*<br>*of all others similarly situated*<br><br>Plaintiffs<br><br>v.<br><br>HILCO RECEIVABLES, LLC.<br><br>Defendant | *<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*   CASE NO. 10-00113 RDB<br><br>* |

* * * * * * * * * * ***********************************************************************

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY A CLASS
AGAINST DEFENDANT, APPOINT NAMED PLAINTIFF AS
<u>CLASS REPRESENTATIVE AND APPOINT CLASS COUNSEL</u>**

Wayne A. Bradshaw, ("Named Plaintiff" or "Bradshaw"), on behalf of himself and a proposed Class of persons similarly situated, submits this Memorandum in support of his Motion to Certify a Class, Appoint Named Plaintiff as Class Representative and Appoint Class Counsel. All of the Counts supporting the Plaintiff's Motion are taken from the allegations of the Complaint, the Declarations of Attorneys Michael Morin and Scott Borison, and Defendants' answers to discovery requests.

**I.   <u>INTRODUCTION & BACKGROUND</u>**

This case arises from a course of conduct by Defendant, Hilco Receivables LLC ("Hilco"), and its agents, that has led to repeated, knowing violations of federal and state consumer protection laws. COMPLAINT. ¶¶ 1-20. Before commencing collection activities against a Maryland consumer, debt collectors must be licensed under Maryland law. COMPLAINT. ¶ 1. Hilco filed a consumer debt collection against Bradshaw on or about June 22, 2009. COMPLAINT. ¶ 7; Plaintiff's Exhibit 1, Hilco Response to Interrogatory No. 24 ("Defendant filed suit against Plaintiff in the District Court of

Maryland on June 17"). Hilco did not have the required license under Maryland to collect or attempt to conduct consumer debt collection activities. COMPLAINT. ¶¶ 11, 17. Hilco and all persons are presumed to know the law. COMPLAINT. ¶ 19. Hilco knew it was required to have a license but never sought one until after the initiation of this lawsuit. *Id*.; Plaintiff's Exhibit 2, Hilco Response to Production of Document No. 24 (Request 24. "All License Applications submitted by or on behalf of yourself to the State of Maryland or any city or county of the State of Maryland from January 1, 2000 to the present, including all materials submitted to each state in support of the applications." Response: "Defendant has applied, or is in the process of applying for a Maryland license").

Hilco is in the business of purchasing debts of debtors and routinely pursues litigation against Maryland debtors including Bradshaw.[1] One of the lawsuits filed by Hilco was the underlying lawsuit filed against Bradshaw.[2] In addition to the lawsuit Hilco filed against Bradshaw, since October 1, 2007, it has filed more than 100 similar consumer debt collection actions in Maryland state courts. , Plaintiff's Exhibit 5, Declaration of M. Morin at ¶¶ 4 to 6. Hilco did not have the required debt collection license which was a precondition to filing the lawsuits.. COMPLAINT. ¶¶ 11, 17; Plaintiff's Exhibit 2, Hilco Response to Production of Document No. 24 (Request 24. "All License Applications submitted by or on behalf of yourself to the State of Maryland or any city or county of the State of Maryland from January 1, 2000 to the present, including all materials submitted to each state in support of the applications." Response: "Defendant has applied, or is in the process of applying for a Maryland license").

---

[1] Plaintiff's Exhibit 1, Hilco Response to Interrogatory No. 24 ("Defendant filed suit against Plaintiff in the District Court of Maryland on June 17"). *See also* Plaintiff's Exhibit 3, Hilco Response to Requests for Admissions No. 3 ("3. You authorized the filing of the Underlying Lawsuit naming you as the Plaintiff. RESPONSE: Defendant…provided authority for [law firm] to file suit"); Hilco Response to Requests for Admissions No. 4 (4. The debt you sought to collect from the Plaintiff in the Underlying Lawsuit was a debt you acquired after it was in default. **RESPONSE:** Admitted**".**
[2] Exhibit 4, Copy of the District Court of Maryland Complaint, *Hilco v. Bradshaw* (Case No. 110100036962009). *See also* Plaintiff's Exhibit 1, Hilco Response to Interrogatory No. 24 ("Defendant filed suit against Plaintiff in the District Court of Maryland on June 17").

The Plaintiffs seek the certification of the following Class as a means of obtaining the requested relief:

> All persons in the State of Maryland who within three years prior to the filing of the initial complaint, were contacted by the Defendant in connection with any effort to collect a debt.

Because the violations of law described herein were uniform and consistent (Hilco used standardized forms and other documents, and engaged in a systematic course of conduct, and illegally sued more than 45 consumers, the Court should certify the Class at this time. Plaintiff's Exhibit 5, Declaration of M. Morin at ¶ 5; *see generally* COMPLAINT.

In order to reduce repetition, Bradshaw hereby incorporates the factual summary and background included in his Memorandum in Support of Partial Summary Judgment filed contemporaneously with this motion, as if stated herein.

## II.  NAMED PLAINTIFF ALLEGATIONS

1. Within the past 3 years, Mr. Bradshaw, who is a consumer, was sued by Hilco in Maryland state court for a consumer debt acquired by Hilco when the debt was in default.
2. Hilco did not then or upon the filing of this case, have a license required to act as a collection agency in the State of Maryland.
3. The lawsuit by Hilco against Bradshaw was an attempt to collect the consumer debt.

As will be shown below, Defendant's violations of the rights of other class members all fit into the same common pattern as the one described in the Named Plaintiff's Allegations above. Further these violations are ongoing and continue to harm more Maryland consumers with each passing day.

## III.  THE COURT SHOULD CERTIFY THE CLASS IN THIS CASE

   a.   **Governing Principles**

### i.   *Rule 23 favors certification*

Many courts interpret Rule 23 to favor the maintenance of class actions. *See e.g., In re Amerifirst Sec. Litig.,* 139 F.R.D. 423, 427 (S.D. Fla. 1991) ("the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action"); *see also Frost v. Mazda Motors of America, Inc.,* 353 N.C. 188, 193, 540 S.E. 2d 324, 327-328 (N.C. 2000) (same); *Smith v. Behr Process Corp.*, 113 Wash. App 306, 54 P.3d 665 (Wash. App. 2002) (same). The reason to favor class certification is that class action lawsuits are **essential**, and often the only practical way, to enforce consumer protection laws.

> In a large and impersonal society, class actions are often the last barricade of consumer protection . . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action – private suits or governmental actions – have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are not truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.

*Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 574 N.E. 2d 760, 764 (Ill. 1991).

This approach was echoed by this Court in *Arrington v. Colleen*, Inc., 2001 WL 34117734 at *1 (D. Md. Apr. 2, 2001):

> Class certification is a useful tool which can economize and focus judicial resources by allowing the court to consolidate similar claims and provide consistent and conclusive final judgments. Class certification also allows claims that may not otherwise be brought, because the cost of bringing the individual claim is prohibitive when the remedy is either injunctive relief or small monetary damages.

Straightforward consumer cases such as this one are routinely certified as class actions by courts in Maryland and elsewhere. The United States Supreme Court has noted that cases involving consumer or securities fraud or violations of anti-trust laws are especially appropriate for class action treatment. *Amchem Product, Inc. v. Windsor,* 521 U.S. 591, 625 (1997). *See also Benway*, 239 F.R.D. 419

...

(certified class action claims for violation of RESPA); *Mitchell-Tracey v. United General Title Insurance Company*, 237 F.R.D. 551 (D. Md. 2006) (certifying two consumer classes against title insurance underwriter for agents' overcharges); *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D.Md. 1998) (certifying consumer class action against loan servicer).

### ii. *This is the very type of case for which the Class action mechanism was established*

This Court should find that the allegations against the Defendant – namely, that the Defendant conducted debt collection activities without the required license under Maryland law – raises questions which have previously been resolved against the Defendant and therefore should be resolved, once and for all, in a class action. The legal and factual issues that will control resolution of this case for the Named Plaintiffs and for all Class members are relatively simple and straightforward.  Indeed, this case does not present nearly the complexity of anti-trust or other types of cases, which are commonly certified as class actions.  *See, e.g., In Re A. H. Robbins Co., Inc.*, 880 F.2d 709 (4th Cir.), *cert. denied*, 493 U.S. 959 (1989) (mass tort); *In Re Carbon Dioxide Anti-Trust Litigation*, 149 F.R.D. 229 (M.D. Fl. 1993); *Phillips Petroleum Company v. Shutts*, 472 U.S. 797 (1985) (securities fraud).

### iii.    *This Circuit Has Certified Other Consumer Class Actions*

Lawsuits challenging other violations of consumer protection statutes have been approved for class action treatment by courts in the Fourth Circuit and elsewhere. *See Chisolm v. TranSouth Financial Corp.*, 184 F.R.D. 556, 562-63 (E.D. Va. 1999) (certifying consumer class action alleging violations of RICO), *certification upheld*, 194 F.R.D. 538 (E.D. Va. 2000); *In re American Honda Motor Co., Inc. Dealers Relations Litigation*, 979 F. Supp. 365 (D. Md. 1997) (certifying civil RICO claims);

**b.    Legal Requirements for Certification**

R<small>ULE</small> 23 states that "at an early practicable time" the Court must determine whether to certify the

case as a class action. Four requirements for class certification are set forth in RULE 23(a). If all four requirements are satisfied, the Court then looks to RULE 23(b) to determine whether any of three additional criteria is present.

The four requirements of RULE 23(a) are:

(1) The class is so numerous that joinder of all members is impracticable,
(2) There are questions of law or fact common to the class,
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class, and,
(4) The representative parties will fairly and adequately protect the interests of the class.

All four requirements of part (a) are met in this case.

### RULE 23(a)(1) – **Numerosity**

The focus of the numerosity requirement of RULE 23 is judicial economy. "The rule does not set out a precise numerical standard, but presents an impracticability of joinder requirement, of which class size is an inherent consideration." 1 H. Newberg and A. Conte, *Newberg on Class Actions*, § 3:5 (4th ed. 2003). *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D.Md. 1998).

Thus, class sizes of 30-40 members usually raise a presumption that the numerosity requirement is satisfied:

> Certainly, when the class is very large – for example, numbering in the hundreds – joinder will be impracticable; but in most cases the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower... In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23 (a)(1) on that Fact alone.

1 H. Newberg and A. Conte, *Newberg on Class Actions*, § 3:5 (4th ed. 2003). *See also Peoples v. Wendover Funding*, 179 F.R.D. 492, 497 (D.Md. 1998) (noting that "[i]mpracticability refers only to difficulty, not impossibility"); *Dameron v. Sinai Hospital of Baltimore, Inc.*, 595 F. Supp. 1404, 1408 (D. Md. 1984). Classes with as few as 18 members have been certified. *See e.g. Cypress v. Newport*

6

*News Gen. & Nonsectarian Hosp. Ass'n.*, 375 F.2d 648 (4th Cir. 1967).

Plaintiffs need not show the precise number of members in the class, *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983); *Folsum v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y. 1980), because "a contrary rule would foreclose most class litigation . . . ." 1 Newberg and A. Conte, *Newberg on Class Actions*, § 3:5 (4th ed. 2003).

As noted in Exhibit 5, a brief search of public records shows that Defendant Hilco has attempted collection activities upon at least 100 Maryland consumers in Prince George's County alone including some attempts after the initiation of this lawsuit. Plaintiff's Exhibit 5, Declaration of M. Morin at ¶¶ 4 to 6. This is more than sufficient to meet the numerosity requirement.

In this circumstance, the numerosity prong of RULE 23 is satisfied. As Professor Newberg notes:

> The numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure. Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.

1 *Newberg on Class Actions* § 3:3 (4th ed. 2004).

### RULE 23(a)(2) – **Commonality of Issues**

RULE 23(a)(2) requires only that there be a single common question of law *or* fact in order for the court to certify the class action.

This case raises numerous questions of both law and fact that are common to the Class. The common issues include the following:

(a) Whether Hilco has acted as a debt collection agency in the Stat of Maryland;

(b) Whether Hilco is licenses as a debt collection agency in Maryland;

(c) Whether Hilco should be enjoined from continuing to act as a debt collection agency without a license;

(d) Whether Hilco should be ordered to disgorge money that it has wrongfully collected as a debt collection agency when it was not licensed to act as a debt collection agency.

(e) Whether the acts of the Defendant caused damages to the Plaintiff and members of the Class;

"It is important to note that [RULE 23(a)(2)] does not require that all questions of law and fact raised by the dispute be common . . . ." C. Wright and A. Miller, *Federal Practice and Procedures*, §1763 at 12681 (West 1994); *Arrington v. Colleen, Inc.*, 2001 WL 34117734, *3 (D. Md. Apr. 2, 2001). In fact, a **single** common question has been deemed sufficient to satisfy the commonality requirement. *Peoples v. Wendover Funding*, 179 F.R.D. 492, 498 (D. Md. 1998) (holding that a single common issue is sufficient to satisfy commonality); *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y. 1995)(citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992)). "***Thus, factual differences among class members' cases will not preclude certification if the class members share the same legal theory***." *Peoples,* 179 F.R.D. at 498 (*citing Brown v. Eckerd Drugs, Inc.,* 663 F.2d 1268, 1275 (4th Cir. 1981), *vacated on other grounds,* 457 U.S. 1128 (1982)) (emphasis added).

The pertinent factual and legal issues in this case clearly are common to the class. Here, the scope of the central question pertinent to the class members – whether Hilco performed illegal debt collection activities – is identical in all material respects. After all, Plaintiff asserts that the failure to obtain a license was a standardized and organized business decision committed uniformly throughout the state. The inquiry in this case will focus in large part on standardized forms and the same pattern of behavior that are uniform with respect to Defendant's actions.

Finally, Plaintiff notes that the assessment of damages in this case is a straightforward mathematical calculation – In addition to injunctive relief, ***Defendant must pay statutory and out of pocket monetary damages to those class members who have already had illegal consumer debt***

*collection judgments entered against them. Edwards v. First American Corporation*, --- F. Supp. 2d ---, 2007 WL 3071414 (C.D. Cal. Oct. 11, 2007); *Robinson*, 447 F. Supp. 2d at 489; *Benway*, 239 F.R.D. at 425; *Yates v. All American Abstract Co.*, 487 F. Supp. 2d 579, 582 (E.D. Pa. 2007); *Kahrer v. Ameriquest Mortgage Co.*, 418 F.Supp.2d 748 (W.D. Pa. 2006).

Legal and factual questions will be viewed as commonly shared so long as "their resolution does not depend on the facts of any class member's particular claims, but depends rather on the evidence presented taken as a whole." *Chapelle v. E.I. DuPont DeNemours & Co.*, 75 F.R.D. 74, 77 (E.D. Va. 1977). The illegal practices alleged in this case were uniformly because for each consumer class member, Hilco attempted to collect a debt when its lack of a license precluded it from doing so.

The questions of law linking the Class are substantially related to the resolution of the litigation (*i.e.* all Class members' rights were violated and relief should be awarded). *Himmler v. Weinberger*, 422 F. Supp. 196, 199 (E.D. Mich. 1976), *rev'd on other grounds*, 611 F.2d 137 (6th Cir. 1979) (*citing American Finance System, Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974)); *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909 (9th Cir. 1964). In *American Finance System*, for example, several different subclasses, with widely varied factual circumstances in relation to an illegal employment contract and period of employment, brought a Title VII suit. Because the resolution of all claims depended on the resolution of unified legal questions, however, the requirement of commonality was satisfied. *Id.* at 107-8. In the present case, not only are factual differences, if any, slight and irrelevant to the claims, uniform questions of law determine whether relief will be granted. The requirement of commonality is satisfied.

### RULE 23(a)(3) – **Typicality of Claims**

The Plaintiff's claims are typical of each class member's claim. As explained by one court:

> [T]he typicality prerequisite of Rule 23(a) has been construed to require that the relief sought will benefit all class members and that no individual claim within the class be so

9

>   unique as to impair the necessary alignment of interest. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)) . . . [A] general course of conduct by the opposing party which affects the entire class to a same or similar degree, will substantiate the appropriateness of class action status. *Kaufman v. Lawrence*, 76 F.R.D. 397 (S.D.N.Y. 1977).

*Ramirez v. Webb*, 102 F.R.D. 968, 971 (W.D. Mich. 1984).

The facts underlying the Named Plaintiff's claims are as straightforward as they are typical. Like all Class members, the Named Plaintiff was subjected to unlawful consumer debt collection activities of the Defendant. Like all of the class members, Defendant instituted debt collection proceedings against the Named Plaintiff even though the Defendant had no legal right to do so under Maryland law.

As stressed in *Peoples*, 179 F.R.D. at 498, "[t]he test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses." "Thus, while the claims of particular individuals may vary in detail from one to another, the collective claims focus on particular policies applicable to each class member thereby satisfying the typicality requirement of Rule 23(a)." *Briggs v. Brown & Williamson Tobacco Corp., Inc.*, 414 F. Supp. 371, 375 (E.D. Va. 1976).

In this case, Plaintiffs' claims present virtually identical fact patterns and legal theories which each Class member would have to present if he or she filed an individual suit. The claim of every Class member is based upon the same conduct by the Defendant. The Named Plaintiff's claims are, therefore, not only typical of the claims of the Class, they are virtually identical to them. *See Kohl v. Assoc. of Trial Lawyers of America*, 183 F.R.D. 475, 484 (D. Md. 1998); *Benway*, 239 F.R.D. at 424.

### RULE 23(a)(4) – Adequacy of Representation

The standards of RULE 23(a)(4) are met if it appears that the named plaintiff's interests are not antagonistic to those of other class members and that the plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation. *See e.g., Peoples,* 179 F.R.D. at 499; *Bogosian v. Golf Oil*

*Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086 (1978); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011 (1975); *Brown v. Cameron-Brown*, 92 F.R.D. 32, 40-41 (D.C. Va. 1981).

The requirement of adequate representation is not a search for a perfect plaintiff with an unassailable claim. The requirement merely assures that absent class members, who will be bound by the result, are protected by a vigorous and competent prosecution of the case by someone who shares their interests. *See* 1 Newberg and A. Conte, *Newberg on Class Actions*, § 3:21 (4th ed. 2004); *see also George v. Baltimore City Public Schools*, 117 F.R.D. 368, 371 (D. Md. 1987). The Court needs to ensure "that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian*, 561 F.2d at 449.

The Named Plaintiff in this case has no claim or interest that conflicts with those of the Class. Named Plaintiff has followed this case diligently and is prepared to answer discovery and testify at trial.

Appointment of class counsel is now governed by Rule 23 (g), which provides:

> (g) Class Counsel.
> (1) *Appointing Class Counsel.*
> (A) Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.
> (B) An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.
> (C) In appointing class counsel, the court
> (i) must consider:
> the work counsel has done in identifying or investigating potential claims in the action,
> counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
> counsel's knowledge of the applicable law, and
> the resources counsel will commit to representing the class;
> (ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
> (iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and
> (iv) may make further orders in connection with the appointment.

Consideration of each the mandatory factors warrants appointment of the Plaintiff's counsel as class counsel in this matter. The claims were identified because Plaintiff's counsels practices are devoted to advocating for and representing consumers. Plaintiff's counsel stay well educated on current issues in the consumer law area by participating in legislative matters, litigating cases as well as speaking on the law related to the claims.  Identifying Plaintiff's claims was possible because of counsel's active  involvement in the consumer law issues. Prior to and since filing this lawsuit, Plaintiff's counsel have investigated the Defendant and its practices. Plaintiff's counsel has and will commit sufficient resources to prosecute the case.

Plaintiff's counsel is very experienced in class actions as well as consumer law. Plaintiff's counsel has previously been found to be adequate class counsel and have served as lead class counsel in numerous cases involving consumer frauds and other legal violations.  As set forth in the attached Declaration of Counsel, Exhibit 6, Scott C. Borison, has served as class counsel in many class actions, including cases in this Court. Similarly, attorneys Phillip R. Robinson and Peter A. Holland have also served as class counsel in many cases, including cases in this Court.  Similarly, Michael G. Morin and Douglas B. Bowman are both experienced consumer attorneys, each having represented literally scores of consumers, many of which have involved consumer debt collection.  A list of Class Counsel's class action cases are set forth in the accompanying Declaration.

### c. A Class Action Is Appropriate Because the Criteria of Rule 23(b) Are Satisfied

After finding that all four requirements of RULE 23(a) have been met, the Court should certify the case as a class action ***if any*** one of three criteria in part (b) of the RULE is satisfied.  All three criteria are satisfied in this case.

**Rule 23(b)(1)**

Here, the causes of action brought by the Plaintiffs form the necessary backdrop to certify this as a RULE 23(b)(1) class action.[3] Each of the causes of action brought by the Plaintiff seeks to enforce duties and obligations owed the members of the Class in common, collectively and indivisibly. Consequently, inconsistent or varying adjudication of claims to enforce those duties or obligations with respect to individual members of the Class would establish incompatible standards of conduct for the Defendants [RULE 23 (b)(1)(A)]; and adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. [RULE 23(b)(1)(B)]. *See DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171 (8th Cir. 1995) (where claims of individual plaintiffs would essentially determine liability, a (b)(1) certification is appropriate against a bank for over escrowing accounts); *Cass Clay Inc. v. Northwestern Public Service Co.,* 63 F.R.D. 34, 36-37 (D.S.D. 1974 (23(b)(1) requirements met in action against utility company for overcharging customers where distribution of overcharges to customers would come from one fund).

Each cause of action is objective in nature and is the same claim no matter which Class member pursues the claim. Each claim is not particularized or differentiated by the peculiar or personal characteristics of any Class member. Simply stated, either the Defendant's actions are in violation of the law, or they are not. *See Zachary v. Chase Manhattan Bank*, 52 F.R.D. 532, 534 (S.D.N.Y. 1971)

---

[3] A RULE 23(b)(1) class action is maintainable if:
(1)     The prosecution of separate actions by or against individual members of the class would create a risk of
        (A)     inconsistent or varying adjudications with respect to individual members of the class  which would establish incompatible standards of conduct for the party opposing the class, or
        (B)     adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(action against bank for making finance charges in excess of legal rate certified as (b)(1) action since as a practical matter individual action would be dispositive of claims of the class). If the acts of the Defendants do violate the law, then the identical cause of action exists in favor of all the persons to whom the conduct was directed.

### Rule 23 (b)(3)

Class certification is also appropriate under FED. R. CIV. P. 23(b)(3) because the most important issues in this case, both factually and legally, are predominantly common to the Class. For individuals who are denied their statutory protections, there is little to gain by way of individual suits for damages, making class action adjudication the only practical way in which the homeowners can obtain relief against the Defendant. This is the situation addressed by RULE 23(b)(3) which states that a class action is maintainable where:

> The court finds that questions of law or Fact common to the members of the class dominate over any questions affecting only individual members and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

It is black-letter law that in determining whether common issues predominate, the Court's inquiry should be directed primarily toward the issue of liability. *See Bogosian*, 561 F.2d at 456; *see also, Snider v. Upjohn*, 115 F.R.D. at 541; *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 345 (E.D. Pa. 1976).

This case focuses on the uniform and consistent practice of Defendant in violating Maryland law. These practices give rise to common issues of law and fact, which predominate over any possible individual issues in this case. As this Court has stressed: "Generally, certification under this Rule is appropriate when settling the parties' differences in a single proceeding serves their interests by achieving 'economies of time, effort, and expense,' and by promoting uniformity of decisions as to similarly situated class members without sacrificing fairness." *Peoples,* 179 F.R.D. at 501 (quoting

*Amchem Product, Inc. v. Windsor,* 521 U.S. 591, 615 (1997)). As the United States Supreme Court recognized in *Amchem Product, Inc.,* 521 U.S. at 625 (emphasis added):

> ***Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.***

In fact, as noted above, the common questions of law and fact are virtually the ***only*** issues in this case. In *Arrington v. Colleen, Inc.*, 2001 WL 34117734 *8 (D. Md. Apr. 2, 2001), this Court, in certifying a consumer class alleging TILA violations, wrote that:

> In determining whether a class satisfies the requirement of Rule 23(b)(3), a court should consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Based upon this analysis, it is clear that certification is appropriate. First, it is unlikely that an individual Plaintiff would have the resources to pursue their claims – the Named Plaintiff and putative class members are all being pursued for outstanding debts and all are likely facing other financial problems as well. Thus, they currently have little or no resources to hire attorneys or to otherwise protect themselves.

Additionally, judicial resources are economized and focused by handling this case as a class action. *Arrington*, 2001 WL 34117734 at *8. Indeed, unless the Class members obtain relief through this class action, most of the Class will not obtain any relief at all, since they have no resources to hire an attorney. There simply is no other practical means for this Class to challenge a practice that stands in clear violation of controlling law. "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 6 H. Newberg and A. Conte, *Newberg on Class Actions* § 21:30 (4th ed. 2003).

Finally, there are no manageability issues that would preclude certification. The issue of "manageability" was discussed in *In Re: Visa Check/Master Money Antitrust Litigation*, 280 F.3d. 124 (2nd Cir. 2001), *cert. denied*, 122 U.S. 2382 (2002), where the Second Circuit affirmed the certification of a class which consisted of every business in the United States, large and small, that accepted Visa and/or MasterCard credit cards. The class literally consisted of millions of businesses in all fifty states ranging in size from Wal-Mart to the local dry cleaner. The defendants' major challenge on appeal was on the issue of manageability. The Second Circuit first disposed of defendants' argument that individualized proof of damages should preclude certification, saying that "the fact that there may have to be individual examinations on the issue of damages has never been held[] a bar to class actions . . . ." *Id.* at 139. On the general issue of manageability, the Court stated:

> [F]ailure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored, and should be the exception rather than the rule.

*Id*. at 140 (citations omitted).

In this case, there are no management issues with respect to the Class defined above. The Class can be identified from the Maryland Judiciary Case Search website (for litigation cases), and the Defendant's own records (for non-litigation cases). The Defendants used computer systems and programs that can compile comprehensive and detailed information for each and every borrower, including the names and addresses of all potential Class members. As a result, delivery of any notice under RULE 23(c)(2) will not be unduly difficult; nor are there other manageability issues that will hamper the management of this case as a class action.

Recognizing that consumer class actions in general are easy to manage, and understanding that in the absence of a class action, a failure of justice will result, numerous courts have found the class action approach superior in similar cases involving claims under consumer protection statutes. *See, e.g., Proctor v. Metropolitan Money Store Corp.*, 645 F.Supp.2d 464 (D.Md.,2009) (certified RICO,

RESPA, state statutory claims related to a mortgage scheme, and gross negligence); See also, cases cited, *infra.* n

In fact, courts have long recognized that "[c]lass action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'" *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980). Not only does class certification enable class members to share in a financial recovery which they might otherwise never pursue on their own behalf, but it also "provides an opportunity to educate a segment of the public, those included in the class, of the obligations which creditors owe to them as credit consumers." *Id.* Accordingly, a class action is both manageable and far superior to that of individual claims.

### III.  CONCLUSION

This case raises important factual and legal issues for hundreds of Maryland of consumers, issues which are common to all. The Named Plaintiff shares all of these claims with the Class and is committed to bringing them forward to a resolution on behalf of all Class members. The only practical method for adjudicating this case is through class certification. The Court should certify the Class as proposed.

                                                Respectfully Submitted,

                                                */s/ Scott C. Borison*
                                                Scott C. Borison, Esq. (Bar No. 22576)

                                                */s/ Phillip R. Robinson*
                                                Phillip R. Robinson, Esq., Of Counsel
                                                (Bar No. 27824)
                                                Legg Law Firm, LLC.
                                                5500 Buckeystown Pike
                                                Frederick, Maryland 21703
                                                (301) 620-1016; Fax: (301) 620-1018

                                                */s/ Douglas B. Bowman*

        Douglas B. Bowman (Bar No. 8693)
        PO Box 503
        Middletown MD 21769
        (240) 566-6050

        */s/ Peter A. Holland*
        Peter A. Holland (Bar No. 10866)

        */s/ Michael Gregg Morin*
        Michael G. Morin, Of Counsel
        (Bar No. 15539)
        The Holland Law Firm, P.C.
        124 South Street, Ste. 3
        Annapolis, Maryland 214011
        (410) 280-6133

        *Attorneys for the Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served on the Defendant's counsel by electronic service to all parties of record through the ECF system

        _____//s//_____
        Scott Borison