# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

### (Northern Division)

| | | |
|---|---|---|
| WAYNE A. BRADSHAW,<br>*on his own behalf and on behalf*<br>*of all others similarly situated* | * | |
| | * | |
| Plaintiffs | * | |
| v. | * | |
| | * | |
| HILCO RECEIVABLES, LLC. | * | CASE NO. 10-00113 RDB |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO LIABILITY ONLY PURSUANT TO
COUNTS II, III & IV OF THE COMPLAINT**

TABLE OF CONTENTS

Page

I.     BACKGROUND…………………………………………………………….     3

II.    STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO
       GENUINE DISPUTE…………………………………………………………..     6

III.   STANDARD OF REVIEW…………………………………………………….     8

IV.    ARGUMENT…………………………………………………………………...     9

       A.  Statutory Construction and Key Terms and Concepts…………………     9
            i.      Collection Agency………………………………………………    10
            ii.     The Plain Language of MCALA……………………………….    12
            iii.    Legislative history of 2007 Changes to MCALA……………….    13
            iv.     The Mack Letter………………………………………………...    16
            v.      CFR/DLLR Official Position in 2007…………………………...    18
            vi.     Maryland's Current Position on MCALA………………………    19
            vii.    Hilco's Admission That It is a Collection Agency……………...    21
            viii.   Collection Activity (Including Litigation)………………………    22
            ix.     Collector………………………………………………………    23
            x.      Creditor………………………………………………………..    24
            xi.     Debt Buyer……………………………………………………    25
            xii.    Debt Buyer……………………………………………………    25
            xiii.   Direct or Indirect (Collection of Consumer Debt)………………    30
            xiv.    Passive Debt Buyer…………………………………………...    32

       B.  Applying the Undisputed Material Facts, Hilco is Liable as a Matter of
           Law Pursuant to Mr. Bradshaw's Claim Under the Maryland Consumer
           Debt Collection Act (MCDCA), Count II of the Complaint……………    33

       C.  Applying the Undisputed Material Facts, Hilco is Liable as a Matter of
           Law Pursuant to Mr. Bradshaw's Claim Under the Maryland Consumer
           Protection Act (MCPA), Count III of the Complaint…………………...    34

       D.  Applying the Undisputed Material Facts, Hilco is Liable as a Matter of
           Law Pursuant to Mr. Bradshaw's Claim Under the Fair Debt Collection
           Practices Act (FDCPA), Count IV of the Complaint……………………    37

V.     CONCLUSION……………………………………………………………….    42

NOW COMES the plaintiff, Wayne Bradshaw, by and through his undersigned counsel, and hereby files this memorandum in support of his Motion for partial summary judgment this Honorable Court pursuant to Fed. R. Civ. P. 56(d)(2) for Partial Summary Judgment against Defendant Hilco Receivables, LLC ("Hilco") as to liability only pursuant to Counts II, III, IV[1] of the complaint and says:

## I.    BACKGROUND

This case arises from the widespread and organized unlicensed, debt collection practices of Hilco throughout the State of Maryland.  The Maryland Department of Labor, Licensing, and Regulation ("**DLLR**"), the state agency charged with enforcing and interpreting this area of state law by the legislature, recently described such illegal operations as follows:

> Maryland will not tolerate unlicensed activities or other debt collection practices that harm Maryland consumers," Secretary Perez said.  The named companies purchase "junk debt" written off by credit card

---

[1] Mr. Bradshaw is contemporaneously seeking with this Motion certification of this matter as a class action pursuant to Fed. R. Civ. P. 23(c)(1).  However, due to the unique, exceptional facts discussed herein, this motion seeks partial, non-final relief, pursuant to Fed. R. Civ. P. 56(d)(2), in order to focus the parties on those remaining matters actually in dispute and necessary for consideration of the class which have not yet been judicially determined. As explained by the Manual for Complex Litigation, this will help answer "[a] threshold question [of] whether precertification discovery is needed. Discovery may not be necessary when claims for relief rest on readily available and undisputed facts or raise only issues of law (such as a challenge to the legality of a statute or regulation)."  MCL-4TH § 21.14.   *See also Gurule v. Wilson*, 635 F.2d 782, 790 (10th Cir. 1980)("post-judgment certification did not violate Rule 23(c)(1)")(overruling on other grounds recognized by, *E.E.O.C. v. Gaddis*, 733 F.2d 1373(10th Cir. 1984); *World of Sleep, Inc. v. La-Z-Boy Chair Co*., 756 F.2d 1467 (10th Cir. 1985)(district court has power to certify plaintiff class action under Rule 23(b)(2) following earlier favorable ruling on plaintiffs' summary judgment motion)); *accord Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1380–81 (D.C. Cir. 1980).

companies and other consumer lenders, for pennies on the dollar. They attempt to collect this old debt by sending letters, making collection calls, and filing court actions against consumers. *[The Debt Collectors] were not licensed to engage in collection activities in Maryland, yet had filed over 10,000 collection-related actions in Maryland state courts in the last two years, in violation of the Maryland Collection Agency Licensing Act.* All of the named companies engaged in systematic violations of both federal and state debt collection laws by refusing to validate the debts when challenged by consumers, even though in some cases the alleged debt was decades old. *[emphasis added]*

DLLR Press Release, 17 September 2009. **Plaintiffs' Exhibit No. 1**.

More recently, the DLLR addressed the specific issue of whether collection of debts through litigation required a license under Maryland's laws. The DLLR stated:

It has come to the attention of the State Collection Agency Licensing Board ("Board") that certain Consumer Debt Purchasers allege confusion about whether they are required to be licensed as collection agencies when they collect consumer claims through civil litigation. In particular, certain Consumer Debt Purchasers claim that they relied on a June 20, 2007 letter issued by the Board's Administrator in concluding that it is not necessary to be licensed as a collection agency in order to collect in civil litigation a consumer claim purchased in default, provided the case is handled by an attorney duly licensed as a Maryland collection agency.

Licensing Required

The Board wishes to clarify that it has been its consistent position that a Consumer Debt Purchaser that collects consumer claims through civil litigation is a "collection agency" under Maryland law and required to be licensed as such, regardless of whether an attorney representing the Consumer Debt Purchaser in the litigation is a licensed collection agency. Annotated Code of Maryland, Business Regulation Article ("BR") § 7-101(c).

DLLR May 10, 2010 Advisory, Plaintiff's Exhibit 2.

This is a consumer protection lawsuit. The case evolves from collection activities, both direct and indirect, by Hilco to collect consumer debt in Maryland. The Plaintiff alleges, for himself and all others similarly situated, that Hilco's collection activities violate the Fair Debt Collection Practices Act ("**FDCPA**"), the Maryland Consumer Debt Collection Act

4

("**MCDCA**"), and the Maryland Consumer Protection Act ("**MCPA**").  The violations include

Hilco's failure to obtain a required license as a collection agency in violation of the Maryland

Collection Agency Licensing Act ("**MCALA**"), Md. Code Ann., Bus. Reg., § 7-101, *et seq*.[2]

    **The Federal Trade Commission (FTC) recently aptly reported that on debt collection litigation and summarized as follows:**

> The vast number of debt collection suits filed in recent years has posed
> considerable challenges to the smooth and efficient operation of courts. The
> majority of cases on many state court dockets on a given day often are debt
> collection matters. According to the *Boston Globe*, for example, 60% of the more
> than 120,000 small claims cases filed in Massachusetts in 2005 were filed by debt
> collectors.337 In Chicago's Cook County Circuit Court, according to press
> reports, more than 119,000 civil lawsuits against alleged debtors were pending as
> of June 2008.  At that time, some 12,000 such suits were assigned to a single
> judge in that circuit.  Roughly twice the number of debt collection cases on that
> judge's docket one year previously.  Consumer advocates likewise report that
> courts across the country are flooded by debt collection lawsuits.  Judges have
> expressed concern that the burden of handling the number of debt collection
> lawsuits on their dockets is making it difficult for them to handle other cases in an
> expeditious manner.

Federal Trade Commission, Collecting Consumer Debts: The Challenges of Change, February

2009 at Pages 55-56 (footnotes omitted).

    As a result of learning of the illegal nature of Hilco's activities, without the required

license to collect debts in the State of Maryland, and successfully defending the Defendant's

attempt to collect a debt by lawsuit against him, Bradshaw has filed this Complaint seeking

several claims for relief.  Specifically in his FDCPA count, Mr. Bradshaw seeks statutory

---

[2]  All references to Maryland statutes are to those statutes as of September 17, 2009, the date this lawsuit was initially filed in the Circuit Court for Frederick County.

damages on behalf of himself and a class to be determined.  In addition Bradshaw seeks damages under the MDCPA and MCPA.   Based upon the discovery that has been exchanged by the parties, Bradshaw moves for entry of partial summary judgment based primarily on the undisputed material facts and legal argument that Hilco is not now or since had a license as a Maryland collection agency but has performed collection activities in the state to which it did not have the right to do so.  Judgment on these issues will also significantly narrow and focus the issues necessary for trial. It can be determined as a matter of law that without the required license, Hilco conducted illegal collection activities against Bradshaw in violation of federal and state law.

## II.   STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

This matter has many interesting and relevant facts to the overall scheme of the Defendant to illegally attempt to collect alleged debts of Bradshaw and the class members. However, for purposes of this motion and the relief it seeks, only the following facts are material to questions presented to which there is no dispute:

1.   The Defendant admits it has never had nor does it presently have a license to act as a debt collector in the State of Maryland.[3]

2.   The Defendant allegedly relied solely upon telephone calls to the State of Maryland, a trade association publication for debt purchasers, and the legal advice of Maryland

---

[3] Plaintiff's Exhibit 3, Hilco Response to Requests for Admissions Nos. 1 & 2 ("1.  You do not hold a license to act as a debt collector in the State of Maryland.  **RESPONSE:** Admitted.  2. You have never held a license to act as a debt collector in the State of Maryland.  **RESPONSE:** Admitted").

counsel for the belief that it was not required to have a license pursuant to MCALA to act as a collection agency in Maryland.[4]

3.   The Defendant is in the business of purchasing debts of debtors and routinely pursues litigation against Maryland debtors including Bradshaw.[5]

4.   One of the lawsuits filed by Hilco as Plaintiff was the underlying lawsuit filed against Bradshaw.[6]

5.   Hilco freely acknowledges the alleged debt was in default when it purchased it.[7]

---

[4] As explained below, any mistake of law does not provide a defense to the claims asserted by the Plaintiff. The United States Supreme Court in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, --- S.Ct. ----, 2010 WL 1558977 (2010) rejected legal errors as a defense to claims under the Fair Debt Collection Practices Act (FDCPA). The *Jerman* court also noted that Maryland's debt collection statute did not provide any defense based on error.   Notwithstanding, in Plaintiff's Exhibit 4, Hilco Response to Interrogatory No.s 7 & 14 ("Defendant contends that it was not required to obtain a State of Maryland debt collection license.  Defendant bases this position on ACA guide to State Licensing Requirements for Debt Purchasers…Also Defendant contacted the State of Maryland and the State confirmed via telephone that Defendant did not need a license…Defendant retained and relied upon the advice of licensed Maryland legal counsel").  *See also*, Exhibit 4, Hilco Responses to Interrogatory No.s 8 & 13 in which it admits by omission that it never contacted the State Department of Assessments and Taxation to register its business collection activities in Maryland.

[5] Plaintiff's Exhibit 4, Hilco Response to Interrogatory No. 24 ("Defendant filed suit against Plaintiff in the District Court of Maryland on June 17").  *See also* Plaintiff's Exhibit 3, Hilco Response to Requests for Admissions No. 3 ("3.  You authorized the filing of the Underlying Lawsuit naming you as the Plaintiff.  RESPONSE:  Defendant…provided authority for [law firm] to file suit"); Hilco Response to Requests for Admissions No. 4 (4.  The debt you sought to collect from the Plaintiff in the Underlying Lawsuit was a debt you acquired after it was in default.  **RESPONSE:** Admitted**".**

[6] Exhibit 5, Copy of the District Court of Maryland Complaint, *Hilco v. Bradshaw* (Case No. 110100036962009).  *See also* Plaintiff's Exhibit 4, Hilco Response to Interrogatory No. 24 ("Defendant filed suit against Plaintiff in the District Court of Maryland on June 17").

### III.    STANDARD OF REVIEW

Pursuant to the federal rules of civil procedure, summary judgment

should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law . . . If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts-- including items of damages or other relief--are not genuinely at issue. The facts so specified must be treated as established in the action . . . An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.

Fed. R. Civ. P. 56.

This Court has also further explained

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir.2003) (alternation in original) (quoting Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to .... the nonmovant, and draw all

---

[7] Plaintiff's Exhibit 3, Hilco Response to Requests for Admissions No. 4 (4.  The debt you sought to collect from the Plaintiff in the Underlying Lawsuit was a debt you acquired after it was in default.  **RESPONSE:** Admitted**".**

inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir.2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.,* 840 F.2d 236, 240 (4th Cir.1988).

*Boulware v. Isaias Tessema*, 2009 WL 3806401 (D. Md. 2009).

## IV.   ARGUMENT

### A.   *Statutory Construction and Key Terms & Concepts.*

Before applying the undisputed, material facts outlined above to Bradshaw's affirmative claims, it is important to review certain key terms and statutes that are the basis of Bradshaw's claims for relief.

When interpreting statutes we start with the plain language.  Under the first and 'cardinal canon' of statutory construction, 'courts must presume that a legislature says in a statute what it means and means in a statute what it says.'  Accordingly, when a statute is unambiguous, 'this first canon is also the last: 'judicial inquiry is complete.''  Courts will not, however, adopt a 'literal' construction of a statute if such interpretation would thwart the statute's obvious purpose or lead to an "absurd result."

*Stone v. Instrumentation Laboratory Co.,* 591 F.3d 239, 243 (C.A.4 (Md.) 2009) (numerous citations omitted).

A dispositive issue is the issue of whether Hilco has been required, since October 1, 2007, to be licensed by Maryland as a collection agency.  After the filing of this suit, Hilco sought or is seeking to obtain a license. The parties are in agreement that Hilco needs a license. In light of the cardinal canon of statutory construction, the starting point for any matter involving FDCPA, MCALA, MCDCA, and MCPA is a review of the express statutory terms.  If the plain language of the statute resolves the question and "the intent of [the legislature] is clear, that is the end of the matter; for the court, **as well as the agency**, must give effect to the unambiguously expressed intent of Congress."  *[emphasis added]   Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)"); *see also, Addison v. Lochearn Nursing Home, LLC*, 983 A.2d 138, 153 (Md. 2009).

This basic principal of the interpretation of statutes has not changed in 187 years.  *Green v. Biddle,* 21 U.S. 1 (1823)(where the words of a law, treaty or contract have a plain and obvious meaning, all construction in hostility with such meaning is excluded); *Wolsey v. Chapman,* 101 U.S. 755 (1879)(in construing a statute, a critical examination of particular words is never necessary except in cases of doubt); and *Dodd v. U.S.,* 125 S.Ct. 699 (2005)(when the statute's language is plain, the sole function of the courts, at least where the disposition required by the text is not absurd, is to enforce it according to its terms).

### i.    Collection agency.

Hilco is a "collection agency" in Maryland as Hilco engages in the business of directly or indirectly collecting consumer claims that Hilco owns and that Hilco acquired when the claim was in default.  *See* Undisputed Fact No. 5, *supra*.

The term "collection agency" is not defined by FDCPA.  For the purposes of this action, the term "collection agency" is defined by Maryland statute.

> "Collection agency" means a person who engages **directly or indirectly** in the business of:  (1)(i) collecting for, or soliciting from another, a consumer claim; **or** (ii) **collecting a consumer claim the person owns, if the claim was in default when the person acquired it**;  *[emphasis added]*

Md. Code Ann., Bus. Reg., § 7-101(c).

The question of whether Hilco is a collection agency is simple, does Hilco directly or indirectly collect consumer claims that Hilco owns and that Hilco acquired after the claim was in default?  Hilco has confirmed that it acquired Bradshaw's consumer debt after the debt is in default.   There can be no issue regarding the fact that Hilco engaged attorneys to file the state collection lawsuit against Bradshaw.  *See* Undisputed Fact No. 4, *supra*.

In support of its position that it is not a collection agency, Hilco asserts in various discovery requests that the Court find that a letter from a state employee (**Plaintiffs' Exhibit No. 6**)[8] is persuasive and the Court must ignore the plain language of the statute, ignore the legislative history (**Plaintiffs' Exhibit No. 8**), ignore the <u>official</u> interpretation of the Commissioner of Financial Regulation ("**CFR**") issued a month <u>after</u> the Mack Letter (**Plaintiffs' Exhibit No. 9**), ignore the current position of every State agency charged with enforcement of MCALA (**Plaintiffs' Exhibit Nos. 1 and 2**); and ignore Hilco's admission through its belated application to be licensed as a collection agency after the initiation of this lawsuit.

---

[8]  Attached as **Plaintiffs' Exhibit No. 7** is the letter ("**DBA Letter**") that prompted the Mack Letter and provides the necessary context for the Mack Letter.

None of these arguments, raising mistake of law as a defense, have any merit after the Supreme Court's decision in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, --- S.Ct. ----, 2010 WL 1558977 (2010) which rejected legal errors as a defense to claims under the Fair Debt Collection Practices Act (FDCPA). The *Jerman* court also specifically noted that Maryland's debt collection statute did not provide any defense based on error.

The clear, unambiguous language of Maryland licensing statute, the Defendant's own admissions, and all persuasive authority confirms that Hilco is a "collection agency" under MD. CODE ANN., BUS. REG. § 7-101(c).

### ii.    *The Plain Language of MCALA.*

The interpretation of any statute begins with the words of a statute, not the conjecture of an agency employee (*i.e.,* the irrelevant "Mack Letter"). This issue — the issue of plain language — is complicated by the fact that some terms are used in both the FDCPA and MCDCA; however, they do not have the same definition and effect.

In this situation, the words of the statute at issue are clear. The Maryland Collection Agency Licensing Act, MD. ANN. CODE, BUS. REG. ART., § 7-101, et seq. ("**MCALA**") requires any person **directly or indirectly** collecting debts to be licensed. *Id.* at § 7-301 ("Collection agency" means a person who engages directly or indirectly in the business of"…[various activities to collect debts]). Since the words of the statute do not suit Hilco, Hilco tries to convince the Court that it should look beyond the statute, not to any formal regulations or rulemaking by DLLR, but instead to a letter from an employee of DLLR that is at odds with black letter law and with both prior and subsequent official positions regarding MCALA. *See,* Argument at 5.4.1.3., *infra.*

### *iii.*     *Legislative History of 2007 Changes to MCALA.*

If it is necessary to go beyond the plain language of a statute, the legislative history is instructive.  For years, debt buyers sought to avoid Maryland statutes and regulation by asserting that they were not subject to Maryland statues addressing collection agencies.  *See*, Legislative History for 2007 chap. 472 (Bus. Reg. 7-101) HB 1324 attached as **Plaintiffs' Exhibit No. 8**.  In response to this long-standing dispute, the State amended the statute during the 2007 legislative session to insure that the debt buyers flouting consumer protection statues were subject to State regulations and licensure requirements.  *Id.*  Relevant highlights from the legislative history confirm the State's intention of licensing as collection agencies, those persons who acquired consumer debt after the debt was in default including Hilco.

> House Bill 1324 extends the purview of the State Collection Agency Licensing Board to include persons who collect consumer claims acquired when claims were in default.  These persons are known as "debt purchasers" since they purchase delinquent consumer debt resulting from credit card transactions and other bills; these persons then own the debt and seek to collect from consumer like other collection agencies who act on behalf of original creditors.

Senate Finance Committee – 2007 Session (**Plaintiffs' Exhibit No. 8** at Page 8.

> This departmental bill extends the purview of the State Collection Agency Licensing Board to include persons who collect a consumer claim acquired when the claim was in default.  These persons may temporally continue to operate without a license after the bill's October 1, 2007 effective date, pending approval of a license application if the application is made within 30 days.

Fiscal and Policy Note, Department of Legislative Services.(**Plaintiffs' Exhibit No. 8** at Page 9).

*See also,* Floor Report (**Plaintiffs' Exhibit No. 8** at Page 14.

Background:  DLLR advises that the State Collection Agency Licensing Board currently regulates 1,304 collection agencies.  The department estimates that the bill would make 40 debt purchases subject to State regulation.  Debt purchasers are not currently subject to regulation, as they purchase the debt directly from the creditor and are generally compensated as a percentage of their recovery.  Although this activity falls under the federal Fair Debt Collection Practices Act, Maryland consumers are not currently protected in these transactions by the State Collection Agency Licensing Board.

Legislative Analysis of HB 1324 (**Plaintiffs' Exhibit No. 8** at Page 10).

… The law does not require licensing for businesses that only collect their **own** consumer debts, unless the business uses a name or other artifice that indicates that another party is attempting to collect the consumer debt. However, the evolution of the debt collection industry has created a "loophole" used by some entities as a means to circumvent current State collection agency laws.  Entities, such as "debt purchasers" who enter into purchase agreements to collect delinquent consumer debt rather than acting as an agent for the original creditor, currently collect consumer debt in the State without complying with any licensing or bonding requirement. The federal government has recognized and defined debt purchasers as collection agencies, and requires that these entities fully comply with the Federal Fair Debt Collection Practices Act.  **This legislation would include debt purchasers within the definition of a "collection agency," and require them to be licensed by the Board before they may collect consumer claims in this State** … *[emphasis added]*

Testimony in support of HB 1324 by Charles W. Turnbaugh, Commission of Financial

Regulation (**Plaintiffs' Exhibit No. 8** at Page 17).

I am writing on behalf of the Consumer Protection Division, Office of the Attorney General in support of House Bill 1324.  This bill clarifies that the definition of "Collection Agency" contained in Maryland Code Ann., Bus. Reg. § 7-101, **includes businesses that purchase consumer debts that are in default**. *[emphasis added]*

Letter to House Economic Matters Committee by Steven Sakamoto-Wengel, Assistant Attorney General, Consumer Protection Division, Office of the Attorney General (**Plaintiffs' Exhibit No. 8** at Page 18.)

> …Maryland is doing a good job of protecting its citizens and is in the forefront of states doing so.  My perception as a Board member is that the majority of serious debt collection problems now are coming from a small number of maverick collectors and from unregulated newly-evolved kinds of businesses not covered under current licensing laws.  Debt purchasers are increasing in number – problems with their debt collection practices need to come under the same regulations that govern other collectors.  To keep doing the job of protection Marylanders we need adequate tools to give us a measure of control over the actions of businesses that now exist to collect consumer debts outside the scope of traditional collection agencies.  It is frustrating to hear of complaints that are outside our authority only because the purchase of a debt has put the collector outside the current definition of "collection agency."  That needs to be changed to meet the needs of the times, so valid complaints about improper collection behavior can be dealt with regardless of how the company obtained the debt for collection….

Testimony in support of HB 1324 by Eileen (Farnham) Brandenberg, Member, Maryland Collection Agency Licensing Board (**Plaintiffs' Exhibit No. 8** at Page 20)

> …I believe it is important to mandate that **debt purchasers/debt acquisition organizations be licensed as a collection agency**; to protect our citizens from abusive debt collection practices… *[emphasis added]*

Statement of Susan Hayes, Member, Maryland Collection Agency Licensing Board (**Plaintiffs' Exhibit No. 8** at Page 21)

The legislative history eviscerates any assertion that the State did not intend to include persons such as Hilco as a "collection agency" subject to licensing.

### iv. *The Mack Letter.*

Hilco relies upon a June 2007 letter from a CFR employee, an industry trade association publication, and ill-fated advice of unknown Maryland attorneys for the legal proposition that such a letter is somehow the final authority on the issues of whether Hilco is a collection agency that is required to be licensed.  Any review of the Mack Letter would confirm that it does not address litigation and certainly does not indicate that a business that files hundreds of lawsuits every year, which are supported by testimony through affidavits under the penalty of perjury, is a "passive" activity.

On April 19, 2007, DBA International[9] wrote to CFR asking for clarification of licensing requirements for certain persons ("**DBA Letter**").  **Plaintiffs' Exhibit No. 7**.  The DBA Letter fails to mention litigation and limits its inquiry to persons "… who do not engage in collection activity in the State of Maryland."[10]  The DBA Letter then addresses only direct communication between the passive debt buyer and consumers ("… no communication is made with the consumer by the 'passive' debt buyer …").  The DBA Letter is noteworthy for its calculated avoidance of mentioning litigation collection activities.  The DBA Letter further supports its inquiry with documents from the Commonwealth of Massachusetts.[11]  The Mack Letter, in response to the intentionally limited parameters of the DBA Letter, indicated that CFR/DLLR, as of June 2007, did not believe that a "passive debt buyer" that "is not directly engaged in the

---

[9] DBA International is a trade organization representing persons who acquire consumer debt after the debt is in default.

[10] This was the setup for DBA member, debt buyers, to assert that filing hundreds or thousands of lawsuits is not a collection activity or, in that alternative, is not a collection activity by the debt owner and named plaintiff.

[11] A review of the Massachusetts statute confirms its definitions do not match MCALA.

collection of these purchased debts" was required to be licensed as a collection agency.  The Mack Letter responded to the very limited parameters of the DBA Letter, that stated there would be no communication with consumers, and that did <u>not</u> address litigation which would include affidavits or other documentation being provided by the debt buyer in support of collection actions or that the debt buyer would employ attorneys as their agents.

Regardless, Maryland law does not recognize any special deference to a so-called agency interpretation when it "was not promulgated as a formal regulation."  The deference that is often shown to administrative agencies' interpretations of statutes is only afforded to rulemaking or regulations of the agency.  Despite the plain language of the statute, the official position of the Commissioner at the time the statute was enacted, the enforcement activities by DLLR, and Hilco's current license status or near license status.

"Maryland is unique in that 'an agency's organizational rules, procedural rules, interpretive rules and statements of policy all must go through the same procedures as required for legislative rules.'"  *State v. Copes*, 175 Md.App. 351, 380-381 (2007).  The procedures for the promulgation of rules before the DLLR is clearly set forth in COMAR.  If a party wants the DLLR to issue authoritative interpretative rules or statements of policy, then the party must submit a petition to DLLR.  *See* COMAR 09.01.05.03.  If the DLLR's procedures are not followed, whether an agency action is arbitrary and capricious cannot be monitored. Defendant does not assert, nor is there any evidence or other suggestions, that the Mack Letter was formulated in accordance with <u>any</u> agency rulemaking procedures.  Therefore, the letter is not entitled to any deference.  It is merely a letter giving a personal opinion, on a very limited and ill-defined issue, that is contrary to the Agency's position and the law enacted by the legislature.

The fact that the letter purports to reflect the position of Commissioner Turnbaugh does not make it so, nor is it of any import.

In *Claggett v. Maryland Agricultural Land Preservation Foundation*, 182 Md.App. 346, 378, 957 A.2d 1083, 1102 (Md.App. 2008), the court rejected deference to an administrative practice and explained:

> However, the Foundation's interpretation of Ag-1999 § 2-513, embodied in its "long-standing administrative practice," was not promulgated as a formal regulation. See, e.g., *Christensen v. Harris County*, 529 U.S. 576, 586-87, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) ("Interpretations such as those in opinion letters-like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law-do not warrant Chevron-style deference."). Therefore, it would be " 'entitled to respect,' " but only to the extent that it had the " 'power to persuade.' " Id. (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).

*See id.* at Page 378, Footnote 17.

In addition to the inherent lack of authority in a letter such as the Mack Letter, Hilco asserts that such a letter from a state employee in response to limited question is more persuasive than the <u>combination</u> of the plain language of a statute; the legislative history of a statute; the stated position of the Maryland Commissioner of Financial Regulation concurrent with the passage of the statute and <u>subsequent</u> to the Mack Letter; the current positions of the Maryland Commissioner of Financial Regulation, the Secretary of the Department of Labor, Licensing and Regulation, and the Maryland Attorney General; and Hilco's own acts where it admits that it needs a license to do what it has been doing.

### v.     CFR/DLLR official position in 2007.

If there had ever been any reasonable reliance on the Mack Letter, that reasonable reliance ended a month later on July 17, 2007.  Less than one month after the Mack Letter, the Maryland Commissioner of Financial Regulation issued its <u>official</u> position as DLLR Advisory Notice No. 07-06 ("**Advisory**").  **Plaintiffs' Exhibit No. 10.**  The Advisory clearly stated the Commissioner's official position on the changes to MCALA**.**  The Advisory does not mention "debt buyer", does not mention "passive debt buyer", and does not mention any litigation exemption to the MCALA.  The Commission's position was unambiguous that "… effective October 1, 2007 any person engaged in the collection of a consumer claim the person owns, if the claim was in default when the person acquired it, is required to be licensed as a collection agency pursuant to HB 1324 …".

The majority of "debt buyers" complied with MCALA; however, Hilco and others now cling to the Mack Letter as their excuse to have avoided compliance with MCALA.  In one of those inexplicable coincidences, Hilco and a few other debt buyers have multiple copies of the Mack Letter but allegedly never received and have no knowledge of any other State notice, opinion, or document regarding MCALA.  The defense premised on an alleged mistake of law has nevertheless been extinguished by the Supreme Court in *Jerman*.

### vi.     Maryland's current position on MCALA.

The Maryland position regarding the requirement of licensing of collection agencies was clearly confirmed again on September 16, 2009 when DLLR issued a cease and desist order against the largest "debt buyer" in Maryland, Midland Funding, LLC.[12]  **Plaintiffs' Exhibit No.**

---

[12]  The cease and desist order was the direct result of DLLR's review of the complaint filed in *Johnson, et al. v. Midland Funding, LLC,* case no. 09-cv-02391-rdb, United States District Court for the District of Maryland.

**11**.  DLLR issued a press release on September 17, 2009 that again stated the agencies' position.

**Plaintiffs' Exhibit No. 1**.

The Maryland position regarding the requirement of licensing of collection agencies was clearly reiterated on December 17, 2009 in the memorization of the final settlement in the Midland matter:

> … 4.  The position of the Agency is that, unless otherwise exempt, **a person who brings actions in Maryland State courts to collect consumer claims which were acquired when the claims were in default is knowingly and willfully doing business as a "collection agency" in the State** under [Bus. Reg.] § 7-101(c).  This includes, but is not limited to, the named Plaintiffs in such judicial actions, which will normally be the owners of the consumer debt.
>
> 5.  Thus the Agency's position is that **a Plaintiff in a Maryland State court action brought to collect a consumer claim which was acquired when the claim was in default is required to be licensed as a collection agency** under MCALA, and is subject to the regulatory authority of the Agency in the conduct of that litigation.
>
> 6.  The position of the Agency is that **a person who brings judicial actions in Maryland State courts to collect consumer claims which were acquired when the claims were in default also meet the definition of "collector" under CL § 14-201(b)** of the Maryland Consumer Debt Collection Act ("MCDCA," at Commercial Law Article ("CL"), § 14-201 et seq., Annotated Code of Maryland) and of "debt collector" under 15 U.S.C. § 1692(a) of the Fair Debt Collection Practices Act ("FDCPA," at 15 U.S.C. § 1692, et seq.). …*[emphasis added]*

*In the Matter of:  Midland Funding, LLC, et al.*, before the Maryland State Collection Agency Licensing Board in the Office of the Commissioner of Financial Regulation, DFR-FY-2010-063 (**Plaintiffs' Exhibit No. 12**).

Finally, earlier this month, the Maryland State Collection Agency Licensing Board ("Board") issued an Adivory Notice to Maryland Collection Agencies on May 5, 2010 that is

relevent to the issues addressed by the Court concerning the pending Motion for Summary

Judgment by Defendant Midland Funding LLC. See Exhibit 2, Advisory 05-10. In this advisory

the Board states:

> The Board wishes to clarify that it has been its consistent position that a
> Consumer Debt Purchaser that collects consumer claims through civil litigation is
> a "collection agency" under Maryland law and required to be licensed as such,
> regardless of whether an attorney representing the Consumer Debt Purchaser in
> the litigation is a licensed collection agency. Annotated Code of Maryland,
> Business Regulation Article ("BR") § 7-101(c).

*Id.* (emphasis added).

It is difficult to imagine a more definitive position statement by any State agency.

### vii.    *Hilco's admission that it is a collection agency.*

Hilco is required to obtain a license and any argument otherwise is disingenuous given

the fact that Hilco, subsequent to the commencement of this action, applied for a license under

MCALA. [13]

In a products liability case, subsequent remedial measures are generally inadmissible.

However, this is not a products liability case and there is no issue of correcting a safety problem.

Hilco's act of seeking a license to collect debts, a license that Plaintiffs contend that Hilco should

have had since October 1, 2007, can be and is a statement by a party opponent.  This statement is

an admission that can and should be considered in this case.

---

[13] Plaintiff's Exhibit 13, Hilco Response to Production of Document No. 24 (Request 24. "All
License Applications submitted by or on behalf of yourself to the State of Maryland or any city
or county of the State of Maryland from January 1, 2000 to the present, including all materials
submitted to each state in support of the applications."  **Response:  "Defendant has applied, or
is in the process of applying for a Maryland license."**)

Given Hilco's admission that it needs a license, any arguments presented to the Court saying otherwise rings hollow.

>    ### viii.    *Collection activity (including litigation).*

Hilco collection activity, both directly and indirectly, within the State includes suing Maryland consumers as the Plaintiff in a consumer debt collection action.  The issue of whether or not the FDCPA applies to litigation activities was decided almost fifteen years ago by the U.S. Supreme Court in *Heintz v. Jenkins*, 514 U.S. 291, 297 (1995).  In *Heintz*, the defendant claimed that the FDPCA did not apply to litigation activities.  The Supreme Court held that "…litigating, at first blush, seems simply one way of collecting a debt." *Id.* at 297.  The *Heintz* case resolved a dispute between federal circuit courts as to whether litigation fell within the definition of debt collecting under the FDCPA.  The 6th Circuit in *Green v. Hocking*, 9 F.3d 18 (6th Cir. 1993) had adopted the view that "[o]nly collection activities, not legal activities, are covered by the act." The Supreme Court specifically rejected that position and held litigation activities are collection activities.  Additionally, the FDCPA itself also specifically addresses litigation activities.  For example, 15 U.S.C. § 1692i(a) states:  "Venue… **Any debt collector who brings any legal action on a debt against any consumer** shall… ." *[emphasis added]*

Other challenges to the application of the FDCPA to litigation activities have been routinely rejected by both the 4th Circuit and by this Court.  For example, in *Sayyed v. Wolpoff & Abramson*, the Fourth Circuit Court of Appeals considered and summarily rejected the defense of a litigation privilege to defeat claims under the FDCPA.  485 F.3d 226 (4th Cir.2007) (also holding that even a letter from a debt collector to a debtor's attorney can be actionable under the FDCPA).  In 1999, this Court, Judge Davis, quoting from *Heintz*, confirmed that litigation is a

collection activity under FDCPA. *Jackson-Spells v. Francis,* 45 F.Supp.2d. 496 (D. Md. 1999) (FDCPA included litigation).

In addition to Hilco's obvious participation as plaintiff in hundreds of collection lawsuits, including the case against Bradshaw in the District Court of Maryland, Hilco directly participated in each lawsuit by executing hundreds of affidavits with the sole purpose of collecting consumer debt. These affidavits, which asserted claims against the consumers, were the basis for seeking and obtaining judgments against the consumers.

The 11th Circuit recently addressed this issue in *LeBlanc v. Unifund CCR Partners*, __ F. 3d ____, 2010 WL 1200691. The court summarily rejected the argument that litigation was not debt collection holding:

> In addition, in light of the state court lawsuit Unifund brought to recover on the debt, we summarily reject Unifund's contention that it has not engaged in "collection activity" with regards to LeBlanc

2010 WL at *5.

There is no credible argument that litigation is not debt collection.

### ix.   *Collector.*

Hilco is a collector within the State of Maryland. The term "collector" is defined by the MCDCA:

> "Collector" means a person collecting or attempting to collect an alleged debt arising out of a consumer transaction.

Md. Code Ann., Com. Law, § 14-201(b).

There is a significant difference between "debt collector" pursuant to FDCPA and "collector" pursuant to MCDCA and MCPA. The FDCPA distinguishes between "creditor" and

"debt collector."  For purposes of FDCPA, a person is either one or the other.  MCDCA and MCPA make no such distinction.  MCDCA and MCPA include every person collecting or attempting to collect any debt arising out of a consumer transaction.

Com. Law § 14-201(b) does <u>not</u> limit the definition of collector to any specific activity or to either directly or indirectly attempt to collect debt.  The question of whether Hilco is a collector pursuant to MCDCA is determined by answering one simple question:  is Hilco collecting or attempting to collect an alleged debt arising out of a consumer transaction?

### x.    *Creditor*

Hilco is <u>not</u> a creditor as that term is defined by FDCPA.  FDCPA defines "creditor" as:

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such term **does not include any person to the extent that he receives an assignment or transfer of a debt in default** solely for the purpose of facilitating collection of such debt for another.  *[emphasis added]*

15 U.S.C. § 1692a.

Even more relevant to the position of Hilco is the FDCPA distinction between creditor and debt collector.  The terms are mutually exclusive, a person may be a creditor or may be debt collector, but a person cannot be both a creditor and a debt collector for the same debt.  *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536-537 (7th Cir. 2003) (FDCPA treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not).

Hilco admittedly acquired debts when they were in default.  Under the FDCPA, Hilco is a "debt collector" rather than a creditor even if Hilco may now own the debt instrument or debt account.

### xi.    Debt buyer.

The term "debt buyer" is not defined by Blacks Dictionary or any statute relevant to this lawsuit.  The term is contrived, without a legal definition, and devoid of meaning.  Logically, every assignee of a negotiable instrument is a "debt buyer."  Logically, every holder in due course is a "debt buyer."  The issues raised in this case have nothing to do with debt *buying* or with whether a debt is owed; the issues raised in this case are entirely about debt *collection*.

Hilco has attempted to evade the law by ignoring statutory definitions and relabeling itself by use of a meaningless term, *i.e.,* passive debt buyer.  Hilco could adopt "torpid non-commercial delinquent monetary obligation financier" or other similar moniker; however, this Court would still have to review Hilco's <u>activities</u> in view of the definitions of FDCPA, MCALA, MCDCA, and MCOA rather than by Hilco's moniker *de jure*.  The question of whether a debt buyer that outsources collection activity is a debt collector was answered 23 years ago in *Kimber v. Federal Financial Corporation,* 668 F.Supp. 1480 (M.D. Ala. 1987).  *See,* Argument at 5.4.6., *infra.*

### xii.    Debt collector.

Hilco is a "debt collector" as that term is defined by FDCPA, 15 U.S.C. § 1692a. FDCPA defines the term "debt collector."

> To distinguish between these two possibilities [creditor or debt collector], the Act uses the status of the debt at the time of the assignment:

> (6) The term "debt collector" means any person who ... regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.... The term does not include - … (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (iii) *concerns a debt which was not in default at the time it was obtained by such person.*

*Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534 (7th Cir. (Ill.) 2003), quoting from FDCPA, 15 U.S.C. § 1692a.

Over 23 years ago in *Kimber v. Federal Financial Corporation,* 668 F.Supp 1480 (M.D. Ala. 1987), the seminal decision concerning these issues addressed the business model used by "debt buyers" and whether such persons are subject to FDCPA.  Kimber was a consumer.  The defendant, Federal Financial Corporation ("**FFC**") acquired consumer debt after the debt was in default.  FFC argued that it was not subject to FDCPA as it collected on its own account rather than for another.  The court rejected that position:

> This history reflects that the target and emphasis of the Act are "third-party" or "independent" collectors of "past-due" or "delinquent" debts. As the Senate Committee that considered the Act wrote,
>
> > The committee intends the term "debt collector," subject to the exclusions discussed below, to cover all third persons who regularly collect debts for others. *The primary persons intended to be covered are independent debt collectors.*

S. Report No. 95-382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1697 (emphasis added).  The Committee explained that it limited the Act's coverage to third-party collectors of past due debts because,

> Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them.

26

*Id.,* at 1696.

> With §§ 1692a(4) and 1692a(6)(A), Congress clearly sought to exclude creditors-that is, those who extend credit and collect their own debts-from the Act's coverage; such persons are, in the words of the Senate Report, "restrained by the desire to protect their good will." But, when these so-called creditors are in effect merely in the business of collecting stale debts rather than extending credit, they are no longer true creditors but debt collectors who, in the words of the Senate Report, "are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them"; they are simply independent collectors of past due debts and thus clearly fall within the group Congress intended the Act to cover.

*Kimber,* 668 F.Supp at 1485-1486.

Since 1987, the issue of the FDCPA status of assignees of debt in default has been repeatedly addressed by other courts. At least seven federal circuit courts have addressed the issue of the FDCPA status of assignees of defaulted debt and have held that any assignee of consumer debt, if the assignee acquired the debt while it was in default, is a debt collector pursuant to FDCPA. *Alibrandi v. Financial Outsourcing Services, Inc.,* 33 F.3d 82 (2[d] Cir. (N.Y.) 2003); *F.T.C. v. Check Investors, Inc.,* 502 F.3d 159 (3rd Cir. (N.J.) 2007); *Brown v. Morris,* 243 FedAppx. 31 (5th Cir. (Miss.) 2007); *Downs v. Clayton Homes, Inc.,* 88 Fed.Appx. 851 (6th Cir. (Tenn.) 2004); *Ruth v. Triumph Partnerships,* 577 F.3d 790 (7th Cir. (Ill.) 2009); *Volden v. Innovative Financial Systems, Inc.,* 440 F.3d 947 (8th Cir. (S.D.) 2006); *and Rowe v. Educational Credit Management Corp.,* 559 F.3d 1028 (9th Cir. (Or.) 2009).

A 7th Circuit decision that is directly on point for many of the issues in this case is *Ruth, v. Triumph Partnerships,* 577 F.3d. 790 (7th Cir. 2009). In *Triumph,* the plaintiffs were consumers. The defendants included a "debt buyer," Triumph, which had acquired the consumer accounts after the accounts were in default. *Id.* at 793. Triumph in turn hired TAS to collect the

consumer debt. *Id.* As in this case, the debt buyer, Triumph, asserted that it had no direct communication with consumers.  A document drafted and executed by Triumph was forwarded to TAS to be sent to the consumers. *Id.*  The consumers alleged the document was a violation of FDCPA and sued both Triumph and TAS. *Id.* 794. As in this case, the debt buyer asserted, among many other assertions, that (1) FDCPA did not apply to Triumph as it owned the debt and (2) Triumph could not violate FDCPA as it took no action itself. *Id.* at 796.

The District Court rejected Triumph's assertion that it was not a debt collector; however, the District Court eventually entered judgment in favor of Triumph. *Id.* at 799.  The 7th Circuit agreed that Triumph was a debt collector; however, it rejected Triumph's other assertions, reversed the summary judgment for the collectors, and ordered the trial court to enter judgment for the consumers. *Id.* at 793 & 805.

The 7th Circuit found that Triumph was a debt collector under FDCPA.

> Triumph Partnerships submits that "it is a creditor and not a debt collector because it purchases delinquent debt thereby becoming one 'to whom a debt is owed' under § 1692a(4)." … It contends that it does not fit the statutory definition of a debt collector because it does not collect debts; rather, it purchases debts and then hires others to collect them.  The district court considered this argument and rejected it.   Triumph Partnerships contends that the district court erred in doing so.
>
> Triumph Partnerships' argument is foreclosed by our precedents.  The FDCPA distinguishes between debt collectors, who are subject to the statute's requirements, and creditors, who are not.  "For purposes of applying the Act to a particular debt, these two categories ... are mutually exclusive." *Schlosser,* 323 F.3d at 536.  Where, as here, the party seeking to collect a debt did not originate it but instead acquired it from another party, we have held that the party's status under the FDCPA turns on whether the debt was in default at the time it was acquired. *See* ***\*797McKinney,*** 548 F.3d at 501;*Schlosser,* 323 F.3d at 538-39. We based this interpretation on the language of the statute, which excludes from its

definition of "creditor" those who acquire and seek to collect a "debt in default," 15 U.S.C. § 1692a(4), and excludes from its definition of "debt collector" those who seek to collect a debt "which was not in default at the time it was obtained," *id.* § 1692a(6)(F).

We also found support for this distinction in the rationale behind Congress' decision to treat the originator of a debt obligation differently from a party whose only interest is in the collection of a debt that already has fallen into default. We explained this rationale in *Schlosser:*

Creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," S. Rep. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, are not covered by the Act. Instead, the Act is aimed at debt collectors, who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them." *Schlosser,* 323 F.3d at 536. The purchaser of an already-defaulted debt-like the debt collector, and unlike the originator and servicer of a non-defaulted debt-has no ongoing relationship with the debtor and, therefore, no incentive to engender good will by treating the debtor with honesty and respect. Accordingly, we have held that a party that seeks to collect on a debt that was in default when acquired is a debt collector under the FDCPA, "even though it owns the debt and is collecting for itself." *McKinney,* 548 F.3d at 501 (citing *Schlosser,* 323 F.3d at 538-39).

*Triumph,* at 796.

Additionally, the 7th Circuit rejected Triumph's position that it took no action to collect the debts.

Triumph Partnerships maintains that it should not be considered a debt collector in this case because it "took no ... action" to collect the debts at issue in this case. … It points out that it "did not draft, authorize, or send the collection letter at issue in this lawsuit." *Id.* Responsibility for drafting the letter, however, is irrelevant. Ms. Ruth does not take issue with the collection letter itself; rather, she alleges that the notice, which was sent in the same envelope as the letter, falsely or deceptively claimed that the defendants had the right to disclose the plaintiffs' personal information without their permission. Triumph Partnerships admits that it drafted the notice and directed TAS to include it in the mailing with the

> collection letter.   If, as Ms. Ruth alleges, the notice was sent "in
> connection with" an attempt to collect a debt—a question we shall address
> below—then Triumph Partnerships' control over its drafting and mailing
> plainly constituted affirmative conduct with regard to collecting a debt.

*Id.* at 797.

In *Triumph*, the documents at issue were simple notices mailed to the consumers.  In this case, the documents at issue were affidavits attached to other documents that were personally served on consumers.  Hilco knew that the affidavits would be sent to the consumers.  If drafting an unsigned notice is affirmative conduct, executing an affidavit in support of a debt collection lawsuit is certainly affirmative conduct.  Even more damning in this case is the fact that Hilco directed or authorized its agent to file a lawsuit on behalf of Hilco.

### xiii.      Direct or indirect (collection of consumer debt).

In its discovery responses, Hilco attempts to avoid responsibility for its conduct by asserting that it does not directly attempt to collect consumer debt but engages others to perform the acts on its behalf.  The argument fails because the relevant statutes clearly address the issue of a person collecting a debt either directly or indirectly.

> The term "debt collector" means any person who uses any instrumentality
> of interstate commerce or the mails in any business the principal purpose
> of which is the collection of any debts, or who regularly collects or
> attempts to collect, **directly or indirectly**, … *[emphasis added]*

15 U.S.C. § 1692a(6).

> … (c) "Collection agency" means a person who engages **directly or
> indirectly** in the business of:   (1)(i) collecting for, or soliciting from
> another, a consumer claim; or   (ii) collecting a consumer claim the person
> owns, if the claim was in default when the person acquired it;    (2)
> collecting a consumer claim the person owns, using a name or other
> artifice that indicates that another party is attempting to collect the

consumer claim;   (3) giving, selling, attempting to give or sell to another, or using, for collection of a consumer claim, a series or system of forms or letters that indicates directly or indirectly that a person other than the owner is asserting the consumer claim; or   (4) employing the services of an individual or business to solicit or sell a collection system to be used for collection of a consumer claim.

Md. Code Ann., Bus. Reg., § 7-101.

The most serious flaw in Hilco's argument regarding its direct or indirect efforts to collect consumer debt is that the Plaintiffs have asserted conduct by Hilco that is <u>both</u> direct and indirect.   For the lawsuit against the Plaintiffs and for other potential class members, Hilco prepared, executed, and submitted testimony through one or more affidavits. *Grden v. Liekin, Ingber & Winters, P.C.,* 2010 WL 199947 (E.D. Mich. 2010) (affidavit attached to state complaints are communications governed by FDCPA); *Eckert v. LVNV Funding, LLC*, 647 F.Supp.2d 1096 (E.D. Mo. 2009)(under the FDCPA, if an attorney can be liable for litigation activities, which include filing an affidavit containing misrepresentations, then certainly the debt collector is subject to the same liability); *Midland Funding, L.L.C. v. Brent,* 644 F.Supp.2d 961 (N.D. Ohio 2009) (affidavits attached to complaints for money themselves constitute communications for the purposes of FDCPA); and *Hill v. Javitch, Block & Rathbone*, 574 F.Supp.2d 819 (S.D. Ohio 2008)(a debt collector will only be liable where it files a false document or false affidavit with the complaint).   Each affidavit of Hilco constitutes debt collection, and is subject to the FDCPA and, if fraudulent, constitutes a violation of the FDCPA in which Hilco <u>directly</u> engaged. The submission of the affidavits fall within the FDCPA. The 4th Circuit in *Sayyed v. Wolpoff & Abramson*, 485 F. 3d 226 (4th Cir. 2007) held that the exemption of "formal pleadings" to the disclosure of warnings mandated by the FDCPA, e.g., "this is an attempt to collect a debt" required by 15 U.S.C. Section 1692e (11), did not extend to interrogatories or other

litigation activities.  Hilco's affidavits do not contain the warning required by 15 U.S.C. § 1692e (11) providing an additional basis for finding a violation of the FDCPA.

Hilco is also liable for its indirect collection efforts, *i.e.,* the collection activities by and through its lawyers. A corporation, by definition, can act only by agents.  *Heckler v. Baltimore & Ohio R. Co.,* 167 Md. 226 (1934).  More specifically, a notification given by an attorney who is an agent with authority to act in the premises is the act of the client.  *Bob Holding C., v. Normal Realty Corp.,* 223 Md. 260, 164 A.2d 457 (1960).  For more than a hundred years, the Supreme Court's position on the issue is that the client is bound by the act of its attorney whether it knew of the acts or not.  *Putnam v. Day*, 89 U.S. 60 (1874).  To accept Hilco's position on this issue would effectively alleviate any liability of a debt collector if that debt collector was a corporation.  There is no support for such a result.

> xiv.     ***Passive debt buyer.***

As with the term debt buyer, the term "passive debt buyer" has no legal meaning or significance.  It is not defined in any state or federal statute, or any reported state or federal case. The term is contrived specifically to allow certain types of debt collectors to avoid federal and state regulation and oversight, avoid consumer protection statutes and, conceivably, for tax evasion.[14]

Again, this lawsuit does not evolve from debt <u>buying</u> or whether a debt is owed; this lawsuit evolves from debt <u>collection</u>.

---

[14]  This could be accomplished by the fact that an unlicensed entity that moves all of its income through an attorney escrow account, could avoid detection by the State Treasurer's office.  While this tax evasion is present in similar cases, the Plaintiffs currently have <u>no</u> evidence that it exists in this case.

### B. Applying the Undisputed Material Facts, Hilco Is Liable as a Matter of Law Pursuant to Mr. Bradshaw's Claim Under the Maryland Consumer Debt Collection Act (MCDCA), Count II of the Complaint

#### i. MCDCA Prohibits Collections Actions, Like the State Collection Action against Mr. Bradshaw, When the Debt Collector Knows That Right Does Not Exist

"The MCDCA protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts. MD. CODE ANN., COM. LAW §§ 14-201 to 14-204." *Spencer v. Hendersen-Webb, Inc.,* 81 F. Supp. 2d 582, 594 (D. Md. 1999).  The court in *Kouabo v. Chevy Chase Bank, F.S.B.,* 336 F. Supp. 2d 471, (D. Md. 2004) explained further:

> Section 14-202 of the MCDCA states that "[i]n collecting or attempting to collect alleged debt, a collector may not... (8) claim, attempt, or threaten to enforce a right *with knowledge* that the right does not exist." Md. Code Ann., Comm. Law § 14-202(8) [Emphasis Added]. This has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right. *Spencer v. Hendersen-Webb, Inc.,* 81 F. Supp. 2d 582 (D. Md.1999) (holding that the "knowledge" required by § 14-202 of the MCDCA refers to actual knowledge or reckless disregard as to the falsity of the information or the existence of the right).

*Id.* at 475 (emphasis in original).  However,

> the term "knowledge" in the [MCDCA] does not immunize debt collectors from liability for mistakes of law…Moreover, in the context of consumer protection, 'it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.' *Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir.1996)…Professional debt collectors and their attorneys, therefore, must be held to be aware of laws affecting the validity of their collection efforts.

*Spencer,* 81 F. Supp. 2d at 595.

#### ii. Applying the Genuine Facts Not in Dispute, Hilco Is Liable to Mr. Bradshaw Pursuant to His Claim Under the MCDCA

There can be no doubt that the attempt to collect a consumer debt through litigation

against Mr. Bradshaw, while ignoring the mandatory condition precedent enacted by the legislature in 2007 requiring a license to be a debt collector before engaging in collection activities, constitutes a "[c]laim, attempt, or threat[] to enforce a right with knowledge that the right does not exist" while "collecting or attempting to collect an alleged debt a collector."   MD. CODE ANN., COM. LAW, § 14-202(8). *See* Material Facts 1-5. The legislature expressly prohibited such acts by using "may not" in the prohibition. MD. CODE ANN., COM. LAW, § 14-202(8).

Through its privies and authorized representatives, Hilco initiated the illegal debt collection action against Mr. Bradshaw.  In the State Court Action Hilco was "collecting or attempting to collect an alleged debt arising out of a consumer transaction."  MD. CODE ANN., COM. LAW,  § 14- 201(a).  The transaction involved Mr. Bradshaw's alledged consumer debt related to "real or personal property, services, money, or credit for personal, family, or household purposes."  MD. CODE ANN., COM. LAW,  § 14-201(b).

Any violation of the MCDCA prohibitions, including MD. CODE ANN., COM. LAW, § 202(8), constitutes liability to for Hilco to Bradshaw.  MD. CODE ANN., COM. LAW, § 203. Wherefore, Mr. Bradshaw requests the Court enter judgment in his favor as to liability only, pursuant to the MCDCA, leaving for the trier of fact to determine the amount of damages.

### C.   *Applying the Undisputed Material Facts, Hilco Is Liable as a Matter of Law Pursuant to Mr. Bradshaw's Claim Under the Maryland Consumer Protection Act (MCPA), Count III of the Complaint*

In *Hoffman v. Stamper*, 867 A.2d 276 (Md. 2005), the Maryland Court of Appeals held:

An 'unfair or deceptive trade practice' includes any false or misleading statement or representation which has the capacity, tendency, or effect of deceiving or misleading consumers and encompasses a representation that consumer realty has a characteristic that it does not have or is of a particular standard or quality that is not the case. Commercial Law Art. § 13-301. Section 13-408 of that

34

article provides for a private cause of action to recover for loss or injury sustained as the result of a practice forbidden by the CPA.

*Id.* at 294.

The MCPA also holds that material omissions constitute unfair or deceptive practices, if a significant number of unsophisticated consumers would find that information important in determining a course of action in the consumer transaction involved. MD. CODE ANN., COM. LAW, §§ 13-301, 13-303. In *Hoffman v. Stamper* the court upheld the MCPA claims against a residential appraiser, who had no contact with the borrower, for the unfair or deceptive practices related to overstated values for flipped houses "directly 'infected' the sales at issue . . . [where the consumers] would not have proceeded to closing absent those appraisals. [The appraiser] was an integral part of the entire scheme of deceptive trade practices committed in the sale of consumer realty." *Hoffman*, 867 A.2d at 295.

Based upon the undisputed material facts confirming that Hilco did not obtain the necessary license as a mandatory, condition precedent established by the legislature before collecting or attempting to collect an alleged debt owed by Mr. Bradshaw, Hilco is liable to Bradshaw under the MCPA. *See* Material Facts 1-5 *supra.* The MCPA provides that Hilco "may not engage in any unfair or deceptive trade practice...in ...(4) The collection of consumer debts." MD. CODE ANN., COM. LAW, § 13-303. In addition the MCPA describes unfair or deceptive trade practices as "(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers...[and] (3) Failure to state a material fact if the failure deceives or tends to deceive." MD. CODE ANN., COM. LAW, § 13-301.

Hilco had the statutory duty to Mr. Bradshaw, before commencing a collection activity, including litigation, to become licensed as a debt collector under MCALA.  It failed to do so. These undisputed, material acts constitute as a matter of law violations of the MD Code, Commercial Law, § 13-301(1)&(3) & 13-304(4) and establish that Hilco is liable to Ms. Remington as a matter of law on her claim under the MCPA.[15]

Finally, this result is entirely consistent with the express purpose of the MCPA

> to set certain minimum statewide standards for the protection of consumers across the State . . . [and to] take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland.

MD. CODE ANN., COM. LAW, § 13-102.  If debt collectors like Hilco are permitted to not comply with mandatory licensing requirements,[16] consumers like Mr. Bradshaw will continue to be harmed. There is no just reason or excuse to prevent vulnerable consumers and homeowners from the collection action activities of unlicensed debt collectors. To hold otherwise would be to subvert the 2007 requirements and promote further unfair or deceptive debt collection actions

---

[15] Mr. Bradshaw's damages will be determined at a later stage of these proceedings.

[16] The omission or misrepresentation of information deemed mandatory and necessary by the legislature must constitute a material omission or misrepresentation which is actionable under the consumer protection act.  See *Luskin's, Inc. v. Consumer Protection Div.,* 726 A.2d 702, 713 (Md. 1999) ("a material misrepresentation . . . involves information that is important to consumers and, hence, likely to affect their choice of . . . a product. Consumers thus are likely to suffer injury from a material misrepresentation")(internal quotations and citation omitted); *Miller v. Pacific Shore Funding,* 224 F. Supp. 2d 977 (Md. 2002), *aff'd* 92 Fed.Appx. 933 (under MCPA the failure to state a material law is a failure to state a material fact only if the law requires that the law be stated).

in violation of the simplest of license requirements determined by the General Assembly to be necessary and required for all debt collectors.

> **D.** *Applying the Undisputed Material Facts, Hilco Is Liable as a Matter of Law Pursuant to Mr. Bradshaw's Claim Under the Fair Debt Collection Practices Act (FDCPA), Count IV of the Complaint*

The FDCPA was enacted in 1977 by the United States Congress in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. Section 1692 (a). The purpose of the FDCPA was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. 1692 (e).

The FDCPA is a remedial consumer protection act that sets forth minimum standards relating to the collection of debts. "[S]tatutes are remedial in nature if they are designed to correct existing law, to redress existing grievances and to introduce regulations conducive to the public good.'" *Pak v. Hoang*, 378 Md. 315, 324-25 (2003) (quoting *Langston v. Riffe,* 359 Md. 396, 408-09 (2000) (further citation omitted)).  The Court of Appeals has further explained the circumstances under which a statute is characterized as "remedial:"

> 'Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries. They also include statutes intended for the correction of defects, mistakes and omissions in the civil institutions and the administration of the state.'

*Pak,* 378 Md. at 324-25 (quoting *Langston,* 359 Md. at 408-09).   Once a statute is considered

remedial it "'must be liberally construed ... in order to effectuate [its] broad remedial purpose.'"

*Pak*, 378 Md. at 326 (quoting *Caffrey v. Dep't of Liquor Control for Montgomery Co.*, 370 Md.

272, 306 (2002)) (alteration added).

The FDCPA has been recognized to be a remedial consumer protection statute.   As

explained by the Third Circuit Court of Appeals in *Brown v. Card Service Center,*  464 F.3d 450,

453 -454 (3rd Cir,  2006):

> Congress enacted the FDCPA in 1977 after noting the "abundant evidence of the use of
> abusive, deceptive, and unfair debt collection practices by many debt collectors." 15
> U.S.C. § 1692(a). At the time the Act was being considered, Congress was concerned that
> "[a]busive debt collection practices contribute to the number of personal bankruptcies, to
> marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* A
> significant purpose of the Act is not only to eliminate abusive practices by debt
> collectors, but "to insure that those debt collectors who refrain from using abusive debt
> collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).
>
> In its findings Congress observed that "[e]xisting laws and procedures" enacted to
> remedy the injuries occasioned by abusive debt collectors "are inadequate to protect
> consumers." 15 U.S.C. § 1692(b). Accordingly, the Act provides consumers with a
> private cause of action against debt collectors who fail to comply with the Act. 15 U.S.C.
> § 1692k. A prevailing plaintiff under the Act is entitled to an award of damages, costs of
> suit and reasonable attorneys' fees. *Id.*
>
> Because the FDCPA is a remedial statute, *Hamilton v. United Healthcare of La.,* 310
> F.3d 385, 392 (5th Cir.2002), we construe its language broadly, so as to effect its
> purpose, *See Stroh v. Director, OWCP*, 810 F.2d 61, 63 (3d Cir.1987). Accordingly, in
> considering claims under another provision of the FDCPA, we have held that certain
> communications from lenders to debtors should be analyzed from the perspective of the
> "least sophisticated debtor." *See Wilson v.Quadramed Corp.,* 225 F.3d 350, 354
> (applying the perspective of the least sophisticated debtor to the notice provision of the
> Act, § 1692g) (citation omitted); *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991)
> ("Statutory notice under the Act is to be interpreted from the perspective of the 'least
> sophisticated debtor.' ").

Analyzing lender-debtor communications from this perspective is consistent with "basic consumer-protection principles." *United States v. Nat'l Fin. Servs.,* 98 F.3d 131, 136 (4th Cir.1996). As the Second Circuit has observed, "[t]he basic purpose of the least-sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." [FN1] *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993). That it may be obvious to specialists or the particularly sophisticated that a given statement is false or inaccurate does nothing to diminish that statement's "power to deceive others less experienced." *Federal Trade Comm'n v. Standard Educ. Soc'y,* 302 U.S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141 (1937). As Justice Black has observed, our laws "are made to protect the trusting as well as the suspicious," and this is particularly the case within the realm of consumer protection laws. *Id.* Bearing all of this in mind, we conclude that any lender-debtor communications potentially giving rise to claims under the FDCPA…should be analyzed from the perspective of the least sophisticated debtor.

The issue of whether or not the FDCPA applies to litigation activities was decided over a decade ago by the U.S. Supreme Court in *Heinz v. Jenkins*.  In that case, the Defendant claimed that the FDPCA did not apply to the litigation that was filed and pending. The Supreme Court rejected the argument stating:

> The issue before us is whether the term 'debt collector' in the Fair Debt Collection Practices Act, 91 Stat. 874, 15 U.S.C. §§ 1692-1692 *o* (1988 ed. and Supp. V), applies to a lawyer who 'regularly,' *through litigation,* tries to collect consumer debts. The Court of Appeals for the Seventh Circuit held that it does. We agree with the Seventh Circuit and we affirm its judgment.

*Heintz v. Jenkins,* 514 U.S. 291, 292, 115 S.Ct. 1489, 1489 (1995).

The FDCPA itself also specifically addresses litigation activities. For example, 15 U.S.C. § 1692 addresses and regulates venue issues relating to collection actions. Other challenges to the application of the FDCPA to litigation activities has been routinely rejected. In *Sayyed v. Wolpoff & Abramson*, the Forth Circuit Court of Appeals considered and summarily rejected the defense of a litigation privilege to defeat claims under the FDCPA.  *Sayyed v. Wolpoff &*

*Abramson,* 485 F.3d 226 (4th Cir.2007) (also holding that even a letter from a debt collector to a debtor's attorney can be actionable under the FDCPA).

As noted above, the 11th Circuit recently addressed this issue in *LeBlanc v. Unifund CCR Partners*, __ F. 3d ____, 2010 WL 1200691. The court summarily rejected the argument that litigation filed was not debt collection by the plaintiff when it held:

> In addition, in light of the state court lawsuit Unifund brought to recover on the debt, we summarily reject Unifund's contention that it has not engaged in "collection activity" with regards to LeBlanc

2010 WL at *5.

Finally, there are numerous cases that hold that the failure to obtain and hold a license to collect debts is a violation of the FDCPA. *Ruth v. Triumph Partnerships,* 577 F.3d. 790. In a similar Connecticut case, the federal court summarized the Plaintiff's FDCPA claim as follows:

> Under Connecticut law, businesses that engage in the collection of consumer debts must be licensed to do so. Conn. Gen.Stat. § 36a-801. Engaging in collection of consumer debts without a license constitutes a violation that may be punished by the Banking Commissioner, Conn. Gen.Stat. §§ 36a-50, -804, -806 to -808….

> That is not the end of the analysis, however. Under federal law, consumer debt collection agencies may not use 'false, deceptive, or misleading representation[s]' or 'unfair or unconscionable means' to collect debts. 15 U.S.C. §§ 1692e, 1692f. 'Without limiting the general application' of those broad prohibitions, *id.,* Congress gave specific examples of practices or representations which would violate those generalized prohibitions, including threatening 'to take any action that cannot legally be taken or that is not intended to be taken,' § 1692e(5), and '[t]he use or distribution of any written communication ... which creates a false impression as to its source, authorization, or approval.' § 1692e(9).

> The theory that provides the foundation for [the Plaintiff's] lawsuit is that [Wolpoff & Abramson, LLP's] communication with consumers in Connecticut is a violation of Connecticut law, and that therefore it constitutes a *per se* violation of the FDCPA.

40

*Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 323 (D.Conn.,2009). *See also Gaetano v. Payco of Wisconsin, Inc.*, 774 F.Supp. 1404, 1415 (D.Conn.,1990) ("the Court holds that the defendant's unlicensed actions as a collection agency in the state of Connecticut constituted an "unfair or unconscionable" method of debt collection in violation of [15 U.S.C.] § 1692f. By failing to seek the proper license from the state banking commissioner, for example, the defendant deprived the plaintiff of her right as a consumer debtor residing within the state to have the defendant's qualifications as a collection agency reviewed by state authorities…Accordingly, the plaintiff is also entitled to summary judgment on this claim; *Williams v. Goldman & Steinberg, Inc.*, 2006 WL 2053715, at *1 (E.D.N.Y.) (court "conclude[d] that there was a violation of the FDCPA because the defendant did not have a license when it sent the Collection Letter to a New York City resident, as required by regulations of the City of New York…Here, the unopposed allegations were not of such a technical nature: the defendant was not licensed at all in New York City, as required by local ordinance. Therefore, a violation has been established"); and *Clark v. Universal Debt Solutions, Inc.*, 2007 WL 2386581 (D.Hawai'i) ("Defendant is a collection agency and debt collector, unlicensed and unregistered in the state of Hawaii…[wherefore] [the] Court recommends that judgment be awarded to Plaintiff [including] Statutory damages in the amount of $1000.00 for the Fair Debt Collection Practices Act violations").

There is also no legal merit to the suggestion the filing of a lawsuit seeking payment of debt is not debt collection. The U.S. Supreme Court settled this issue years ago when it held "…litigating, at first blush, seems simply one way of collecting a debt." *Heintz v. Jenkins* 514 U.S. 291, 297. The *Heintz* case resolved a dispute between federal Circuit Courts as to whether litigation fell within the definition of debt collecting under the FDCPA. The 6th Circuit in *Green*

*v. Hocking* 9 F.3d 18 (6th Cir. 1993) adopted the view that "[o]nly collection activities, not legal activities, are covered by the act." The Supreme Court rejected the reliance of the statement of the sponsor since "the plain language of the Act itself says nothing about retaining the exemption in respect to litigation." *Heintz v. Jenkins*, 514 U.S. 291, 297.

There is no factual dispute that the Defendant did not hold a license to act as a debt collector in the State of Maryland when it sued Mr. Bradshaw and hundreds of other Maryland consumers.  Material Facts Not in Dispute 1-6, supra pages 6 to 7.  Violating the licensing requirements of the MCALA is a per se violation of the FDCPA. 15 U.S.C. § 1692e(5)(" A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section…[including] [t]he threat to take any action that cannot legally be taken or that is not intended to be taken").   As such Mr. Bradshaw is entitled to a judgment as a matter of law as to liability against Hilco as to Count IV of his Complaint.

## V.     CONCLUSION

For the foregoing reasons, pursuant to Fed. R. Civ. P. 56, Mr. Bradshaw requests this Honorable Court to enter partial summary judgment since there is no genuine dispute of material fact as to Hilco's liability to Mr. Bradshaw pursuant to the MCDCA, MCPA, and FDCPA (Counts II, III, and IV of the Complaint).  In addition, Mr. Bradshaw requests that this Honorable Court to specify the following facts which are not genuinely or legally in dispute as discussed herein:

1. Hilco commenced an improper consumer debt collection action in the District Court of Maryland (State Court Case) against Mr. Bradshaw on June 22, 2009.

2. Prior to commencement of its lawsuit against Mr. Bradshaw, Hilco did not have a license to act as a debt collector in the State of Maryland.

3. Hilco acquired the consumer debt associated with the State Court Case when it was in default.

Respectfully Submitted,

*/s/ Scott C. Borison*
Scott C. Borison, Esq. (Bar No. 22576)

*/s/ Phillip R. Robinson*
Phillip R. Robinson, Esq., Of Counsel
(Bar No. 27824)
Legg Law Firm, LLC.
5500 Buckeystown Pike
Frederick, Maryland 21703
(301) 620-1016; Fax: (301) 620-1018

*/s/ Douglas B. Bowman*
Douglas B. Bowman (Bar No. 8693)
PO Box 503
Middletown MD 21769
(240) 566-6050

*/s/ Peter A. Holland*
Peter A. Holland (Bar No. 10866)

*/s/ Michael Gregg Morin*
Michael G. Morin, Of Counsel
(Bar No. 15539)
The Holland Law Firm, P.C.
124 South Street, Ste. 3
Annapolis, Maryland 214011
(410) 280-6133

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing line was served this 26th day of May, 2010, by electronic service to all parties of record through the ECF system

_____//s//_____

Scott Borison