IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| WAYNE A. BRADSHAW, et al. | | |
| | * | |
| Plaintiffs, | | |
| | * | Civil Action No.: RDB-10-113 |
| v. | | |
| | * | |
| HILCO RECEIVABLES, LLC, | | |
| | * | |
| Defendant. | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Wayne A. Bradshaw filed this action, on behalf of himself and all others similarly situated, against Defendant Hilco Receivables, LLC, for alleged unlawful debt collection practices.  Currently pending before this Court is Plaintiff's Motion for Partial Summary Judgment as to Liability Only on Counts II, III, & IV of the Complaint (ECF No. 16). Also pending is Defendant Hilco Receivables, LLC's Cross Motion for Summary Judgment (ECF No. 22).  This Court has reviewed the record, as well as the pleadings and exhibits, and conducted a hearing on February 7, 2011 pursuant to Local Rule 105.6 (D. Md. 2010).  For the reasons stated below, Plaintiff's motion is GRANTED, and Defendant's Motion is DENIED with respect to Counts II, III, and IV.  Defendant's Motion is partially GRANTED with respect to Count I in which the Plaintiffs have sought injunctive and declaratory relief.

## BACKGROUND

On September 17, 2009, Wayne A. Bradshaw ("Plaintiff" or "Bradshaw") filed this class action lawsuit in the Circuit Court for Frederick County, Maryland, seeking damages and declaratory and injunctive relief against Defendant Hilco Receivables, LLC ("Defendant" or

"Hilco").  Bradshaw alleges that Hilco acted as a debt collector in the State of Maryland without a license and that Hilco unlawfully filed lawsuits against Plaintiff and others (collectively "Plaintiffs") as part of its debt collection practices.  Bradshaw contends that Hilco, through its actions, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.*  On January 15, 2010, Hilco removed Bradshaw's lawsuit to this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

The Plaintiff class, as represented by Bradshaw, consists of all persons in the State of Maryland who within three years prior to the filing of the initial complaint were contacted by Hilco in connection with any effort to collect a debt.  *See* Pls.' Mot. Certify Class 1, ECF No. 15; Order Granting Class Certification, ECF No. 44.

On June 17, 2009, Hilco filed suit (the "Underlying Lawsuit") against Bradshaw in the District Court of Maryland for Frederick County in order to collect a debt that it purchased from Bradshaw's creditors after the debt went into default.[1]  Likewise, Plaintiffs allege that Hilco regularly pursues litigation against Maryland debtors to collect defaulted debts purchased by Hilco.  Pls.' Mot. Summ. J. 7, ECF No. 16-1.  At the heart of Plaintiffs' case is their contention that in filing suit against Maryland debtors, Hilco acted as a "collection agency" and thereby

---

[1]  Defendant Hilco is in the business or purchasing defaulted debts, on which it subsequently seeks to collect.  *See* Pls.' Mem. Supp. Mot. Partial Summ. J. at 7, nn.5-7 (summarizing Hilco's responses to Plaintiffs' Interrogatories and Requests for Admissions); *see also Cox v. Hilco Receivables, LLC*, 726 F. Supp. 2d 659 (N.D. Tx. 2010) (In a similar case from the Northern District of Texas involving the same Defendant the Court referred to Hilco as "a bulk purchaser of debts in default.").  It is appropriate for this Court to rely on that opinion as a matter of public record.  *See generally Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); 5B Charles Allen Wright & Arthur Miller, *Federal Practice and Procedure*, § 1357 (3d ed. 2004).

violated Maryland and federal law as a result of its failure to obtain a license required by Maryland law.[2]

Plaintiffs argue that they suffered actual damages under their state law causes of action and that they are entitled to statutory damages under the federal FDCPA.  Plaintiffs have moved for partial summary judgment as to liability only on Counts II, III, and IV of the Complaint. Hilco has cross moved for summary judgment, and argues, *inter alia*, that it was not required to be licensed as a collection agency, that filing of lawsuits in state court is not "collection activity," and that even if it was required to obtain a license, that failure alone, does not constitute a *per se* violation of the FDCPA, and finally, that it is entitled to summary judgment on Plaintiffs' state law causes of action.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable

---

[2]  Notably, Bradshaw does not argue that he did not owe the amount of money sought by Hilco in the underlying lawsuit, and he does not challenge the propriety of that proceeding.  Rather, Bradshaw's arguments stem from Hilco's conduct in prosecuting the underlying lawsuit.  *See also* discussion of the *Rooker-Feldman* doctrine *infra* at note 7.

inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

When both parties file motions for summary judgment, as here, the court applies the same standard of review to both motions, with this Court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003); *see also havePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (3d ed. 1983)).

## ANALYSIS

This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 because Plaintiffs' claims constitute a federal question arising under the FDCPA. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a). Because the basis for this Court's jurisdiction arises under the FDCPA claims, those claims will be discussed first, with the state law claims to follow. As the parties' arguments overlap to a significant degree, and for the sake of clarity and brevity, the parties' claims and arguments will be discussed together in the following sections, with the understanding that each motion will be considered on its own merits.

4

As a preliminary matter, during oral argument heard on February 7, 2011, both parties acknowledged that the issues set forth in the respective motions for summary judgment are legal issues and present no genuine issues of material fact that would foreclose this Court from rendering judgment.  Essentially, this Court is asked to determine whether Hilco's filing of lawsuits in Maryland state court without a debt collection license constitutes violations of the FDCPA, the MCDCA, and the MCPA.  For the reasons set forth below, this Court finds that in failing to obtain a license and nevertheless filing lawsuits to collect debt, Hilco violated the FDCPA and the respective state statutes.

## I.  Plaintiffs' Fair Debt Collection Practices Act (FDCPA) Claims (Count IV)

The FDCPA safeguards consumers from abusive and deceptive debt collection practices by debt collectors.  *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 590 (D. Md. 1998) (citing *United States v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131, 135 (4th Cir. 1996)).  The FDCPA regulates debt collectors who "regularly collect or attempt to collect, directly or indirectly, [consumer] debts owed or due another."  *Heinz v. Jenkins*, 514 U.S. 291, 294 (1995) (quoting 15 U.S.C. 1692a(6)).  Section 1692a(6) provides in relevant part: "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . ."  It is clear that Hilco is a debt collector within the meaning of 15 U.S.C § 1692a(6) and has engaged in collection activity as a result of its initiation of state court lawsuits brought against Bradshaw and the class members.  *See Heintz*, 514 U.S. at 297 (holding that litigation to collect a debt is collection activity under the FDCPA); *see also Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 230 (4th Cir. 2007); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010)

(summarily rejecting debt collector's claim that filing lawsuits to collect debt is not "collection activity" under the FDCPA).

It is well established that "the threshold requirement for application of the [FDCPA] is that prohibited practices are used in an attempt to collect a debt." *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87-88 (4th Cir. 1994). The FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. §1692e, and provides a non-exhaustive list of conduct that violates the FDCPA, including "[t]he threat to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5). The FDCPA is a strict liability statute and a consumer has only to prove one violation in order to trigger liability. *See* 15 U.S.C. § 1692k(a); *see also Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 590-91 (D. Md. 1999). Plaintiffs' primary argument relies on the proposition that in filing debt collection lawsuits without first obtaining the requisite license, Hilco threatened to take action that could not legally be taken in violation of 15 U.S.C. § 1692e(5).[3] Hilco argues, primarily, that it was not required to obtain a debt collection license, and secondarily, that even if it was required to be licensed, its failure to do so does not constitute a violation of the FDCPA. In short, the parties ask this Court to determine first, whether a federal cause of action pursuant to Section 1692e of the FDCPA exists when premised on an underlying violation of state law for failing to register as a debt collector, and second, whether Hilco's unlicensed filing of lawsuits in

---

[3]  In their Complaint, Plaintiffs specifically allege three violations of the FDCPA: failure to abide by the statute's notice provisions under 15 U.S.C. §§ 1692g and 1692e(11), and threatening to take action that cannot legally be taken in violation of § 1692e(5). During oral argument and in their briefs, Plaintiffs' argument focused entirely on Section 1692e(5). Similarly, although Defendant made passing reference to the notice provisions of the FDCPA specifically pled by the Plaintiffs in its Complaint, it too focused entirely on Section 1692e(5) during oral argument. Because the Plaintiffs must only prove one violation of the FDCPA to trigger liability, this Court will focus its attention on the claims arising under 15 U.S.C. § 1692e(5).

this case is actually violative of the FDCPA.  Both questions are issues of first impression in this district and in the Fourth Circuit.[4]

**A.  Hilco Was Required To Be Licensed Under The Maryland Collection Agency Licensing Act (MCALA)**

It is first necessary to consider whether Hilco is, in fact, required to be licensed under Maryland law as Plaintiffs' claims rely almost exclusively on Hilco's unlicensed debt collection activities.  The Maryland Collection Agency Licensing Act, MD. CODE ANN., BUS. REG., § 7-101, *et seq.* ("MCALA") requires that "a person must have a license whenever the person does business as a collection agency in the State." *Id.* at § 7-301(a).  For the purposes of this lawsuit, Maryland law defines a "collection agency" as "a person who engages directly or indirectly in the business of: . . . (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it." *Id.* at § 7-101(c).  At all times prior to the institution of this lawsuit, Hilco acknowledges that it did not have a collection agency license.[5]

Although Hilco similarly acknowledges that it acquired Bradshaw's delinquent account while in default, it nonetheless contends that it is not subject to MCALA's licensing requirement on the ground that it was not doing business as a collection agency in the State of Maryland.  *See* Def.'s Cross Mot. Summ. J. 4, ECF No. 22.  As Plaintiffs aptly note, MCALA is clear on its face—it requires that any person who directly or indirectly engages in collecting debts must be

---

[4]  There are at least two other similar pending cases before this Court.  In *Hauk v. LVNV Funding, LLC*, __ F. Supp. 2d __, 2010 WL 4395395 (D. Md. Nov. 5, 2010), Judge Blake denied a defendant's motion to dismiss, ruling that the plaintiffs in that case adequately stated claims on which relief could be granted.  The parties in that case have apparently reached agreement with respect to a proposed class action settlement.  In *Stone, et al. v. Wayric Services, Inc.*, Civ. No. BEL-10-484, Letter Order, July 28, 2010, ECF No. 38, Judge Legg denied the defendant's motion for summary judgment pending further discovery.

[5]  Hilco applied for a collection agency license in late 2009, and received one on May 20, 2010. Def.'s Cross Mot. Summ J. 8, ECF No. 22.

licensed.  *Id.* at §§ 7-101(c), 7-301(a).  Moreover, if there were any confusion, there is ample

legislative history confirming the Maryland General Assembly's intention to require companies

that acquire defaulted consumer debt, such as Hilco, to be licensed.  For example:

> House Bill 1324 extends the purview of the State Collection Agency Licensing
> Board to include persons who collect consumer claims acquired when claims
> were in default.  These persons are known as "debt purchasers" since they
> purchase delinquent consumer debt resulting from credit card transactions and
> other bills; these persons then own the debt and seek to collect from consumers
> like other collection agencies who act on behalf of original creditors.

H.B. 1324, 2007 Leg. Sess., S. Fin. Comm. (Md. 2007), ECF No. 16-9.

> The law does not require licensing for businesses that only collect their own
> consumer debts . . . .  However, the evolution of the debt collection industry has
> created a "loophole" used by some entities as a means to circumvent current State
> collection agency laws.  Entities such as "debt purchasers" who enter into
> purchase agreements to collect delinquent consumer debt rather than acting as an
> agent for the original creditor, currently collect consumer debt in the State without
> complying with any licensing or bonding requirement.  The federal government
> has recognized and defined debt purchasers as collection agencies, and requires
> that these entities fully comply with the Federal Fair Debt Collection Practices
> Act.  This legislation would include debt purchasers within the definition of a
> "collection agency," and require them to be licensed by the Board before they
> may collect consumer claims in this State.

Testimony in Support of HB 1324 by Charles W. Turnbaugh, Comm'r Fin. Reg. (emphasis

removed), ECF No. 16-9.

Despite the above statutory language, and the clear legislative intent to require debt

buying entities such as Hilco to be licensed prior to collecting debts in Maryland, Hilco

nonetheless argues that it is exempt from the licensing requirement because it is a "passive debt

buyer" and therefore not covered by the statute's definition of "collection agency."  Def.'s Cross

Mot. Summ. J. 5, ECF No. 22.  In support of this proposition, Hilco relies on a June 20, 2007

letter issued by Kelly Mack (the "Mack Letter"), an employee of the Maryland Department of

Labor, Licensing and Regulation ("DLLR"), who wrote, in response to an inquiry made by a

trade organization that represents entities that acquire defaulted debt, that where a person "purchases debts in default but is not directly engaged in the collection of these purchased debts," the person is a "passive debt buyer" and is "not required to obtain a collection agency license." Def.'s Cross Mot. Summ. J. ex. C, ECF No. 22-3.  Plaintiffs respond by arguing that the Mack Letter is irrelevant because it does not address litigation, is not entitled to deference because it was not promulgated as a formal regulation, and that it conflicts with the clear language of the statute.  Pls.' Mot. Summ. J. 16-18, ECF No. 16-1.  This Court agrees with the Plaintiffs' interpretation—the Mack Letter clearly does not contemplate the filing of lawsuits by so-called "passive debt buyers" and there is no evidence that the letter was drafted in accordance with any official rulemaking procedures.   Furthermore, Ms. Mack concurs with this interpretation.[6]

Moreover, even if the Mack Letter were entitled to any degree of reliance by Hilco, less than one month after its issuance, the DLLR issued an advisory notice clarifying its official position that "any person engaged in the collection of a consumer claim the person owns, if the claim was in default when the person acquired it is required to be licensed as a collection agency pursuant to HB 1324 . . . ."  DLLR Advisory Notice No. 07-06, July 17, 2007, Pls.' Mot. Summ. J. ex. 10, ECF No. 16-10.  Finally, on May 5, 2010, the Maryland State Collection Agency Licensing Board issued an advisory notice that further clarified its position:

> The Board wishes to clarify that it has been its *consistent* position that a Consumer Debt Purchaser that collects consumer claims through civil litigation is a "collection agency" under Maryland law and required to be licensed as such

---

[6]  On February 7, 2011, Plaintiffs requested, and were granted leave to file an affidavit of Kelly Mack in supplement to their motion for partial summary judgment.  *See* Order, ECF No. 37.  In her affidavit, Ms. Mack confirms that her previously issued "Mack Letter" did not contemplate or refer to debt collection litigation.  Rather, her letter "was directed exclusively at traditional collection activities not involving the use of Maryland courts or any other judicial process." Affidavit of Kelly Mack, Pls.' Supp. Mot., ex. 1, ECF No. 37-1.

> regardless of whether an attorney representing the Consumer Debt Purchaser in
> the litigation is a licensed collection agency.

Maryland State Collection Agency Licensing Bd. Advisory Notice 05-10, May 5, 2010, Pls.'

Mot. Summ. J. ex. 2, ECF No. 16-3 (emphasis added).

As previously stated, it is clear that Hilco is a debt collector and has engaged in collection activity within the meaning of the FDCPA as a result of its initiation of state court lawsuits brought against Bradshaw and the class members. Furthermore, this Court concludes that Hilco violated the MCALA by engaging in collection activity without the required license.[7] As such, because a violation of MCALA will not give rise to a private right of action, *see* MD. CODE ANN., BUS. REG. § 7-401, this Court will now turn to the issue of whether a violation of the Maryland state licensing law may give rise to a federal cause of action under the FDCPA, an issue of first impression in this district.

---

[7] During oral argument, Hilco suggested that a finding by this Court that Hilco violated MCALA with regard to the underlying state court lawsuits filed against the class members could potentially run afoul of the *Rooker-Feldman* doctrine. Under that doctrine, a federal court does not have jurisdiction to overturn state court judgments, even when the federal complaint raises allegations that the state court judgments violate a claimant's constitutional or federal statutory rights. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). In creating this jurisdictional bar, the Supreme Court reasoned that because federal district courts have only original jurisdiction, they lack appellate jurisdiction to review state court judgments. The Fourth Circuit has noted that the *Rooker-Feldman* doctrine is a "narrow doctrine" in that it precludes federal court "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Adkins v. Rumsfeld*, 464 F.3d 456, 463-64, (4th Cir. 2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). In the present case, the *Rooker-Feldman* doctrine is not implicated—Plaintiffs are not attempting to appeal unfavorable state court decisions, and this Court's holdings will not disturb any underlying state actions. This Opinion simply states that, regardless of the legality of any state court collection lawsuits filed by Hilco, the individual plaintiffs are entitled to damages as a result of Hilco's failure to obtain a license under Maryland and federal law. In short, Plaintiffs are not "inviting district court review and rejection of [any state court] judgments." *Exxon Mobil*, 544 U.S. at 284.

**B.  A Fair Debt Collection Practices Act (FDCPA) Cause Of Action Exists As A Result of Hilco's Failure to Obtain a License Under The Maryland Collection Agency Licensing Act (MCALA)**

The FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. §1692e, and provides a non-exhaustive list of conduct that violates the FDCPA, including "[t]he threat to take any action that cannot legally be taken."  15 U.S.C. § 1692e(5).  The theory underlying Plaintiffs' claim is that because Maryland law prohibits collection agencies from conducting debt collection in the state without a license, Hilco's noncompliance with the Maryland statute forecloses it from initiating debt collection activities, including litigation.  Essentially, Plaintiffs argue that Hilco's violation of MCALA's licensing requirement is a *per se* violation of Section 1692e(5)'s prohibition on threats to take action that cannot legally be taken.  There is precedent for that argument.  In *Gaetano v. Payco of Wisconsin, Inc.*, the United States District Court for the District of Connecticut concluded that unlicensed collection activity violated various provisions of the FDCPA.  774 F. Supp. 1404, 1415 (D. Conn. 1990).  Similarly, other district courts faced with violations of parallel state laws that mandate licensure by collection agencies have held that violations of those laws constitute *per se* violations of the FDCPA.  *See, e.g.*, *Sibly v. FirstCollect, Inc.*, 913 F. Supp. 469, 471-72 (M.D. La. 1995); *Russey v. Rankin*, 911 F. Supp 1449, 1459 (D.N.M. 1995); *Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1452 (D. Nev. 1994).

Defendant does not argue that a violation of MCALA's licensing requirements can never form the basis of a FDCPA cause of action, but rather, argues that the failure to obtain a collection agency license does not constitute a *per se* violation of the FDCPA.  There is ample

precedent for this argument as well.  The United States Court of Appeals for the Eleventh Circuit recently considered the issue and, although it determined that the defendant's violation of a Florida licensing statute did support a cause of action under the FDCPA, held that debt collector actions in violation of state law would not automatically constitute *per se* violations of the Act. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190, 1192 (11th Cir. 2010).  The Eleventh Circuit held that "the conduct or communication at issue must also violate the relevant provision of the FDCPA."  *Id.* at 1192, n.13.  Other circuit courts have taken similar positions:

> The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation.  Only those collection activities that use "any false, deceptive, or misleading representation or means," including "[t]he threat to take any action that cannot legally be taken" under state law, will also constitute FDCPA violations.

*Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004).  *See also Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1099-1101 (9th Cir. 1996).  In *LeBlanc*, the Eleventh Circuit noted that "[t]he federal district courts which have analyzed this issue within the context of the FDCPA and the respective state consumer protection registration or licensing statutes have *all* held that [a] violation of state law may support a federal cause of action under the FDCPA."  601 F.3d at 1190 n.9 (collecting cases) (emphasis added).

In light of the clear weight of authority, and absent any cases to the contrary, this Court holds that a violation of Maryland's MCALA licensing requirement may support a cause of action under the FDCPA.  However, this Court declines to hold that any violation of state law, no matter how trivial, constitutes a *per se* violation of the FDCPA.  Accordingly, this Court must next consider whether the actual conduct complained of by Plaintiffs—namely, Hilco's filing of lawsuits to collect defaulted debt without a license—violates Section 1692e(5) of the FDCPA which prohibits threatening to take action that cannot legally be taken.

**C. Hilco Violated The Fair Debt Collection Practices Act (FDCPA) In Filing Lawsuits Without A License In Violation Of The Maryland Collection Agency Licensing Act (MCALA)**

As previously stated, the FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. §1692e, and provides a non-exhaustive list of conduct that violates the FDCPA, including "[t]he threat to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5). The question therefore becomes whether Hilco's unlicensed filing of lawsuits constitute making a "threat to take any action that cannot legally be taken." As recently summarized by Judge Blake of this Court in a similar case, "[t]o prevail on this claim, the plaintiffs must establish that, first, filing a lawsuit and serving interrogatories in connection with the lawsuit constitute 'threat[s] to take [unlawful action],' rather than unlawful actions themselves, and second, that failing to hold a state license renders the filing of the lawsuit 'action that cannot legally be taken.'" *Hauk v. LVNV Funding, LLC*, __ F. Supp. 2d __, 2010 WL 4395395, at *7 (D. Md. Nov. 5, 2010). Those questions arose in a case quite similar to the present case, but because they arose in the context of a motion to dismiss, Judge Blake declined to resolve them at that stage in the litigation.[8]

Although Plaintiffs' FDCPA claims seemingly turn on the resolution of the above questions in their favor, they cite no cases in support of their argument that Hilco's filing of lawsuits constituted threats to take action that could not legally be taken. Similarly, although Hilco asserts that it "did not threaten to take action against Plaintiff," Def. Cross Mot. Summ. J. 14, ECF No. 22, it too cites to no cases for the proposition that the filing of a lawsuit cannot be considered a "threat" to take unlawful action. Nevertheless, other courts have considered the issue and have split on the question of whether 15 U.S.C. § 1692e(5) covers only "threats" to

---

[8] *See supra* note 4.

take action that could not legally be taken, and not the performance of the illegal actions themselves.

Some district courts, including a court in which Hilco is currently a defendant, have taken the position that illegal conduct that is actually undertaken, as opposed to merely threatened, cannot support a claim under 15 U.S.C. § 1692e(5).  *See, e.g.*, *Cox v. Hilco Receivables, LLC*, 726 F. Supp. 2d 659, 666 (N.D. Tx. 2010) ("Section 1692e(5) applies only to threatened action, not to actions already undertaken."); *Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp. 2d 942, 948 (S.D. Oh. 2005) (dismissing § 1692e(5) claim because defendants "did not *threaten* to take action, but actually took it by filing the complaint") (emphasis in original); *Clark v. Pollard*, No. IP 99-1414-C H/G, 2000 WL 1902183, at *3 (S.D. Ind. Dec. 28, 2000) ("by its plain language, subsection (5) applies to threats of action, not actions actually taken").  However, these few cases clearly reflect the minority view.

On the other hand, the majority view is reflected by the United States Court of Appeals for the Fifth Circuit, as well as district courts in Massachusetts, Washington, Ohio, and Arizona which have held that Section 1692e(5) protects consumers against debt collectors that actually complete illegal acts as well as against debt collectors who merely threaten to complete those acts.  *See Poirer v. Alco Collections, Inc.*, 107 F.3d 347, 350-51 (5th Cir. 1997); *Harrington v. CACV of Colorado, LLC*, 508 F. Supp. 2d 128, 136-37 (D. Mass. 2007); *Sprinkle v. SB&C LTD*, 472 F. Supp. 2d 1235, 1247 (W.D. Wash. 2006) ("[C]ourts have recognized the futility of a statutory scheme that would provide *more* protection to debt collectors who violate the law than to those who merely threaten or pretend to do so. . . .  The opposite conclusion would be akin to attaching liability to one who merely threatens a tortuous act while absolving one who unabashedly completes is.  It is safe to say that such an interpretation veers sharply from the

legislative purpose behind the FDCPA."); *Foster v. D.B.S Collection Agency*, 463 F. Supp. 2d 783, 803 (S.D. Oh. 2006); *Marchant v. U.S. Collections West, Inc.*, 12 F. Supp. 2d 1001, 1006 (D. Ariz. 1998) ("defendants assert that they made no threat; they simply took action.  I think that such argument elevates form over substance.  To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority . . . would defy the very purpose of the section.").

This Court finds the latter, and majority view more persuasive and consistent with legislative intent.  Accordingly, this Court interprets Section 1692e(5) of the FDCPA to include the *taking* of "action that cannot legally be taken."  It simply strains credulity to believe that the FDCPA, a law that safeguards consumers from abusive and deceptive debt collection practices by debt collectors, *See United States v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131, 135 (4th Cir. 1996), would prohibit threats of illegal actions but not the illegal actions themselves:  Indeed, in the context of evaluating a claim under Section 1692e(5) of the FDCPA, the Fourth Circuit has cautioned against taking such a "hyper-literal approach which ignores the ordinary connotations and implications of language as it is used in the real world."  *Id.* at 138.  To find otherwise would undermine the consumer protection goals of the FDCPA.

Finally, in the Fourth Circuit, the "least sophisticated debtor" standard applies to evaluate violations of Section 1692e(5).  *See id.* at 135-36 (discussing that most courts apply the "least sophisticated debtor" standard to evaluate violations of § 1692e(5).); *see also Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) (stating an evaluation of a claim under § 1692e(2)(A) requires analyzing whether the 'least sophisticated consumer' would be deceived by the debt collector representations of the character, amount, and legal status of the debt).  "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects

all consumers, the gullible as well as the shrewd." *Nat'l Fin. Servs. Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).   As a result, the only remaining question is whether the least sophisticated debtor would construe a lawsuit filed against him by Hilco as a threat to take action that could not legally be taken.   It is abundantly clear that the actual filing of a lawsuit fulfills this low standard.   As the District Court of Arizona noted in a similar case, "[t]his is not a case where minds could differ as to whether the collector would take action; the collector *had taken* action." *Marchant v. U.S. Collections West, Inc.*, 12 F. Supp. 2d 1001, 1006 (D. Ariz. 1998) (emphasis in original).   As a matter of law, therefore, Hilco's filing of lawsuits against the class members constitutes "a threat to take . . . action that cannot legally be taken" in violation of 15 U.S.C. § 1692e(5), and summary judgment will be entered in favor of the Plaintiffs on this claim.

**D.  Hilco Is Not Entitled To The Bona Fide Error Defense Pursuant to 15 U.S.C. § 1692k(c)**

Under the FDCPA, a debt collector is shielded from liability under the Act upon a showing, by a preponderance of the evidence, that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).   However, the Supreme Court recently held that the "bona fide error" defense does not apply to "a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010).   In that case, the Court noted that the bona fide error defense may only be used in circumstances where a violation of the FDCPA results from other causes, such as a clerical or factual mistake. *Id.* at 1621.   In a Memorandum Opinion entered on July 27, 2010, this Court specifically noted that as a result of the Supreme Court's interpretation of the bona fide error defense, Hilco was foreclosed from asserting that

any violation of the FDCPA resulted from a flawed legal interpretation of the Act.  *See* Mem. Op. 8, ECF No. 27.

Nevertheless, in its Reply Memorandum in Support of its Cross Motion for Summary Judgment, Hilco again seeks shelter in the bona fide error defense.  See Def.'s Reply Supp. Cross Mot. Summ. J. 8, ECF No. 33.  This time, however, Hilco asserts that its mistaken interpretation of the FDCPA was a mistake of fact, and not a mistake of law.  *Id.*  This argument is without merit.  Hilco provides no basis for a finding that its flawed interpretation of the Maryland licensing requirements and the FDCPA were in any way "factual" mistakes.  Hilco may have received imprudent legal advice, but it was legal advice nonetheless.

**Ii.  Plaintiffs' State Law Claims Under The Maryland Consumer Debt Collection Act (MCDCA) (Count II) And The Maryland Consumer Protection Act (MCPA) (Count III)**

The Maryland Consumer Debt Collection Act ("MCDCA") prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt.  MD. CODE ANN., COM. LAW §§ 14-201 to 14-204.  Specifically, the MCDCA states that a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction," *id.* § 14-201(b), may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."  *Id.* § 14-202(8).  The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices," MD. CODE ANN., COM. LAW § 13-301, and expressly designates as "unfair or deceptive trade practices" those that constitute any violation of the MCDCA.  *Id.* § 13-301(14)(iii).  Essentially, Plaintiffs allege that Hilco's unlicensed filing of lawsuits against the class members violates the MCDCA's prohibition on attempting, or threatening to enforce a right with knowledge that the right does not exist, and that violation, in turn, provides the basis for the MCPA violation.  Each statute creates a private right of action for

17

victims of debt collectors that violate its provisions.  *See id.* § 14-203 (MCDCA) and § 13-408(a) (MCPA).  Because the foundation of Plaintiffs' MCPA claim relies on an alleged underlying violation of the MCDCA, and noting the interrelation of the two statutes, this Court will address both Acts together.

Hilco's main contention with regard to the MCDCA and the MCPA, aside from its continued argument that it was not required to be licensed under MCALA, revolves around the "knowledge" requirement of the MCDCA.  As previously mentioned, the MCDCA states that, in collecting a consumer debt, a collector may not "[c]laim, attempt, or threaten to enforce a right *with knowledge* that the right does not exist."  *Id.* § 14-202(8) (emphasis added).  Hilco maintains that "the lack of state licensure was based upon a mistake of fact, not a mistake of law," and that Hilco "did not act with actual knowledge or reckless disregard that Hilco should have been licensed in the State of Mayland."  Def.'s Cross Mot. Summ. J. 10, ECF No. 22.  As previously discussed, Hilco's contention that any violation of Maryland's licensing laws was based on a mistake of fact and not a mistake of law is without merit.

This Court has previously construed the level of knowledge required under the MCDCA and has held that "[c]onsidering the remedial aim of the MCDCA and the dilution of the statute that would result from a contrary interpretation, the Court holds that the term 'knowledge' in the Act does not immunize debt collectors from liability for mistakes of law."  *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 594 (D. Md. 1999).  In addition, the "knowledge" requirement of the MCDCA "has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right."  *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004) (citing *Spencer*, 81 F. Supp. 2d at 595).  Moreover, this Court has further noted that "it does not seem

unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Spencer*, 81 F. Supp. 2d at 595 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) (in turn, quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393 (1965)).  In the present case, Hilco undoubtedly went perilously close to an area of proscribed conduct in failing to abide by Maryland's licensing laws for debt collectors, and as discussed above, actually crossed the line.

This Court notes the similarities between the Maryland Consumer Debt Collection Act and Section 1692e(5) of the Fair Debt Collection Protection Act and finds that, for the reasons stated above, Hilco has violated Section 14-202(8) of the Maryland Consumer Debt Collection Act.  In addition, because violations of the MCDCA are expressly designated as "unfair or deceptive trade practices" under the Maryland Consumer Protection Act, this Court also finds that Hilco has violated that statute as well.  As a result, summary judgment will be entered in favor of the Plaintiffs on these claims.

### III.  Plaintiffs Are Not Entitled to Declaratory Judgment Or Injunctive Relief

Count I of Plaintiffs' Complaint requests "class declaratory judgment and injunctive relief based on engaging in collection activities without a license."  Compl. Count I, ECF No. 2. Plaintiff does not request summary judgment with respect to this Count.  Hilco argues that it is entitled to summary judgment on Count I because declaratory and injunctive relief is not available under the FDCPA, MCDCA, or the MCPA.  This precise issue was recently considered by this Court, and in *Hauk v. LVNV Funding, LLC*, __ F. Supp. 2d __, 2010 WL 4395395 (D. Md. Nov. 5, 2010), Judge Blake denied a defendant's motion to dismiss generally, but granted it with respect to a count requesting declaratory and injunctive relief.[9]  Judge Blake held that declaratory and injunctive relief is not available under the FDCPA, MCDCA, or the MCPA.  *Id.*

---

[9] *See supra* note 4.

at *8.  At oral argument in the present case, Plaintiffs acknowledged that as a result of the *Hauk* opinion, Hilco is likely entitled to summary judgment with regard to Count I.  Finally, because Hilco applied for, and received a license in late 2010, Plaintiffs request for an injunction barring Hilco from conducting debt collection activities is moot.  Accordingly, Hilco's Cross Motion for Summary Judgment will be granted with regard to Count I of the Complaint.

## CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Partial Summary Judgment as to Liability Only on Counts II, III, & IV of the Complaint (ECF No. 16) is GRANTED, and Defendant's Cross Motion for Summary Judgment (ECF No. 22) is DENIED with respect to Counts II, III, and IV, but GRANTED with respect to Count I in which the Plaintiffs have sought injunctive and declaratory relief.  A separate Order follows.

Dated: February 23, 2011                                    /s/_____
                                                            Richard D. Bennett
                                                            United States District Judge